# EXHIBIT B

FILED DATE: 9/8/2021 11:36 AM  2021L006842

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| Summons - Alias Summons | | (03/15/21) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

JORDAN PENLAND, KARL GERNER,
EDWARD R BURKE, AND PAUL C BURKE

_____

Plaintiff(s)

v.

CHICAGO PARK DISTRICT, SOLDIER
FIELD, AND ASM GLOBAL

_____

Defendant(s)

ASM GLOBAL PARENT, INC. C/O REGISTERED AGENT
CORPORATION SERVICE COMPANY
251 Little Falls Drive, Wilmington, DE 19808

_____

Address of Defendant(s)

Case No.  2021 L 006842

Please serve as follows (check one):  ○ Certified Mail  ◉ Sheriff Service  ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached. You are summoned and required to file your appearance, in the office of the clerk of this court, within 30 days after service of this summons, not counting the day of service. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/ answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/ approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

Summons - Alias Summons            (03/15/21) CCG 0001 B

FILED DATE: 9/8/2021 11:36 AM 2021L006842

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

9/8/2021 11:36 AM IRIS Y. MARTINEZ

| | |
|---|---|
| ⦿ Atty. No.: 64807 | Witness date _____ |
| ○ Pro Se 99500 | |
| Name: Mark Flessner | _____ |
| Atty. for (if applicable): | Iris Y. Martinez, Clerk of Court |
| Plaintiffs | ☐ Service by Certified Mail: _____ |
| Address: 300 S. Wacker Dr. Ste. 1500 | ☐ Date of Service: _____ |
| City: Chicago | (To be inserted by officer on copy left with employer or other person) |
| State: IL   Zip: 60606 | |
| Telephone: 312-648-2300 | |
| Primary Email: mark.flessner@sfbbg.com | |

FILED DATE: 9/8/2021 11:36 AM  2021L006842

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date.  Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:**  DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:    (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:    (312) 603-6441

### ALL SUBURBAN CASE TYPES
#### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:    (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:    (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:    (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:    (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:    (708) 232-4551

**12-Person Jury**

Civil Action Cover Sheet - Case Initiation    (12/01/20) CCL 0520

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

JORDAN PENLAND, KARL GERNER, EDWARD R. BURKE, AND PAUL C. BURKE,

v.

CHICAGO PARK DISTRICT, SOLDIER FIELD, AND ASM GLOBAL,

No. **2021L006842**

FILED DATE: 7/6/2021 2:35 PM   2021L006842

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate case type which best characterizes your action. Only one (1) case type may be checked with this cover sheet.

Jury Demand ☒ Yes ☐ No

FILED
7/6/2021 2:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
13931157

(FILE STAMP)

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☐ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

By: Mark A. Flessner
      (Attorney)                    (Pro Se)

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☒ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** Complaint for relief under the Illinois Human Rights Act

Primary Email: mark.flessner@sfbbg.com

Secondary Email:

Tertiary Email:

**Pro Se Only:** ☐ I have read and agree to the terms of the *Clerk's Office Electronic Notice Policy* and choose to opt in to electronic notice form the **Clerk's Office** for this case at this email address:

### IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FILED
7/6/2021 2:35 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

FILED DATE: 7/6/2021 2:35 PM   2021L006842

## IN THE CIRCUIT COURT
## COOK COUNTY, STATE OF ILLINOIS

| | |
|---|---|
| JORDAN PENLAND, KARL GERNER, EDWARD R. BURKE, AND PAUL C. BURKE, | **COMPLAINT** |
| Plaintiffs, | Judge _____ |
| vs. | Case No. 2021L006842 |
| CHICAGO PARK DISTRICT, SOLDIER FIELD, AND ASM GLOBAL, | **(Jury Trial Demanded)** |
| Defendants. | |

Plaintiffs Jordan Penland, Karl Gerner, Edward R. Burke, and Paul C. Burke, by and

through their counsel of record, Mark A. Flessner of SCHOENBERG FINKEL BEEDERMAN BELL

GLAZER LLC, complain and allege against Defendants Chicago Park District, Soldier Field, and

ASM Global as follows:

### INTRODUCTION

Chicago Park District, Soldier Field, and its management company violated the Illinois

Human Rights Act by denying Lesbian Gay Bisexual Transgender ("LGBT") patrons such as

U.S. Navy Lt. Commander Jordan Penland, his husband and the other Plaintiffs the full and

equal enjoyment of Soldier Field during the 2019 CONCACAF Gold Cup Final on July 7, 2019.

On more than two dozen occasions during this international soccer match, LGBT fans like Lt.

Commander Penland and the other Plaintiffs were repeatedly subjected to thunderous chants by

supporters of Mexico's national team of a homophobic slur—"¡eeeh puto!," which is a vulgar

term for a male prostitute (the "Discriminatory Chant").

The Illinois Department of Human Rights conducted an investigation and correctly

determined that, just as Black individuals at a public sporting event should not be subjected to

FILED DATE: 7/6/2021 2:35 PM    2021L006842

repeated chants of the N-word, LGBT patrons like Lt. Commander Penland and the other

Plaintiffs should not have been repeatedly subjected to thunderous chants of a gay slur at Soldier

Field. The Chicago Park District, Soldier Field, and its management company discriminated

against Lt. Commander Penland and the other Plaintiffs by failing to take necessary actions to

protect LGBT patrons from mass anti-gay misconduct by the overwhelming majority of Mexican

team supporters at the match.

Worse, by delegating key responsibilities to an organization with a sordid history of

discrimination and corruption, the Chicago Park District, Soldier Field, and its management

company abdicated their legal responsibility to control the crowd and breached their foremost

legal duty: to protect the safety of all patrons at Soldier Field.

As a result, the Illinois Department of Human Rights ("IDHR") found substantial

evidence that the Chicago Park District, Soldier Field, and its management company violated the

Illinois Human Rights Act ("Human Rights Act," "IHRA," or "Act" ) by denying LGBT patrons

the full and equal enjoyment of Soldier Field during the 2019 Gold Cup Final. This lawsuit

seeks to enforce the Illinois Human Rights Act to establish the principle that stadiums and other

public accommodations in Illinois have a legal duty to protect LGBT patrons from being

subjected to anti-gay slurs during sports events held at public facilities in Illinois.

## PARTIES

1.      Plaintiff Jordan T. Penland ("Lt. Commander Penland" or "LCDR Penland") is a

Lieutenant Commander in the United States Navy and is currently stationed by order in Cairo,

Egypt. LCDR Penland resides in Seattle, Washington.

2.      Plaintiff Karl E. Gerner ("Gerner") resides in Seattle, Washington. Gerner is

married to Lt. Commander Penland

2

FILED DATE: 7/6/2021 2:35 PM    2021L006842

3.      Plaintiff Edward R. Burke ("Edward Burke") resides in Boise, Idaho.

4.      Plaintiff Paul C. Burke ("Paul Burke") resides in Salt Lake City, Utah.

5.      Defendant Chicago Park District ("Park District" or "CPD") is a body politic and corporate that, pursuant to Illinois law, may sue and be sued, contract and be contracted with, and acquire and hold real property necessary for its corporate purposes.

6.      Defendant Soldier Field is a stadium owned by the Chicago Park District.

7.      Defendant ASM Global is a global facility management and venue services company that operates and manages Soldier Field pursuant to a contract between the Chicago Park District and SMG, a predecessor of ASM Global. ASM Global has its headquarters in Los Angeles, California.

## JURISDICTION AND VENUE

8.      This Court possesses jurisdiction over this action arising from Section 10-102(A)(1) of the Human Rights Act, which provides that "An aggrieved party may commence a civil action in an appropriate Circuit Court."

9.      Venue for this action in this Court is proper under Sections 8-111(A)(1) and 10-102(A)(1) of the Human Rights Act.

## GENERAL ALLEGATIONS

10.     On July 7, 2019, Soldier Field hosted the 2019 CONCACAF Gold Cup Final ("Gold Cup Final"), an international soccer match between the United States and Mexico.

11.     The Gold Cup Final was marred by mass homophobic misconduct by attendees of the match.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

12.     Supporters of Mexico's national team engaged in more than two dozen mass chants of a homophobic slur--"¡eeeh puto!," which is a vulgar term for a male prostitute (the "Discriminatory Chant"), during the Gold Cup Final.

13.     Approximately 62,493 fans attended the Gold Cup Final at Soldier Field on July 7, 2019.

14.     Fans of Mexico's national team dominated the crowd at the Gold Cup Final at Soldier Field on July 7, 2019.

15.     More than 80 percent of the fans in attendance at Soldier Field supported Mexico and engaged in anti-gay misconduct that was not addressed or stopped by the Chicago Park District, Soldier Field, or its management company.

**History of the Discriminatory Chant**

16.     The Discriminatory Chant has been a scourge of international soccer during the last decade.

17.     The Discriminatory Chant is homophobic.

18.     The International Court of Arbitration for Sport has determined that the Discriminatory Chant is homophobic.

19.     Over the last decade, Fédération Internationale de Football Association "(FIFA"), the international governing body for soccer, has repeatedly fined and sanctioned Mexico's national soccer federation, because Mexico's fans have frequently participated in the Discriminatory Chant during matches when Mexico's opponent is taking a goal-kick.

20.     The Discriminatory Chant undermines the dignity of LGBT fans and endangers the safety of all fans at a soccer match.

4

FILED DATE: 7/6/2021 2:35 PM  2021L006842

21.     The Discriminatory Chant also has an established record of being a trigger for fan misconduct and violence.

22.     For example, on October 10, 2015, Plaintiffs Edward Burke and Paul Burke were assaulted at the Rose Bowl during the CONCACAF Final between the United States and Mexico after the Burkes objected to the use of the Discriminatory Chant by neighboring fans in the stands.

23.     CONCACAF apologized to the Burkes for the 2015 incident at the Rose Bowl, but CONCACAF failed to implement and enforce its own rules at subsequent events to stop subsequent occurrences of the Discriminatory Chant.

24.     Plaintiffs Karl Gerner and Paul Burke attended matches during the 2017 Gold Cup at which neither CONCACAF nor responsible officials at stadiums in San Diego and Pasadena, California failed to stop the Discriminatory Chant.

25.     During the 2019 Gold Cup, the Discriminatory Chant occurred at each Mexico match prior to the Gold Cup Final.  Neither CONCACAF nor the responsible stadium officials implemented the Three-Step Match Protocol at any match leading up to the Gold Cup Final, even though the Discriminatory Chant occurred at every Mexico match during the tournament.

**The Management Contract**

26.     The management contract between the Chicago Park District and ASM Global ("Management Contract") provides that "[ASM Global] shall be responsible for security, crowd management, and medical services at the Sports Facilities [including Soldier Field] and for the customers, employees, visitors, and users of the Sports Facilities [including Soldier Field] 24 hours a day, seven (7) days a week."

5

FILED DATE: 7/6/2021 2:35 PM 2021L006842

27.     The Management Contract requires ASM Global to comply with applicable federal and state laws, including the Illinois Human Rights Act.

28.     Both the Human Rights Act and the Management Contract require Soldier Field and its management company to provide LGBT fans with full, equal, and safe enjoyment of any event held at Soldier Field, including the Gold Cup Final.

**Soldier Field's Management Company Contracted with CONCACAF**

29.     Soldier Field and its management company entered into a contract either directly with CONCACAF or through its marketing agent for the Gold Cup Final to be hosted by Soldier Field on July 7, 2019 (the "Event Contract").

30.     Soldier Field's management company entered into the Event Contract with CONCACAF even though it was aware of CONCACAF's recent history of corruption, which included criminal charges filed by the U.S. Department of Justice against several CONCACAF officials in 2015.

31.     Soldier Field's management company entered into the Event Contract with CONCACAF even though it was aware that numerous CONCACAF-sponsored events have been marred by the Discriminatory Chant during the previous five years.

32.     Soldier Field's management company entered into the Event Contract with CONCACAF even though ASM Global was aware that the Discriminatory Chant had occurred without being addressed by CONCACAF during the 2015 and 2017 Gold Cups.

33.     Soldier Field's management company entered into the Event Contract with CONCACAF even though ASM Global was aware that CONCACAF had never before enforced its own rules prohibiting the Discriminatory Chant.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

34.     Soldier Field's management company entered into the Event Contract despite knowing that CONCACAF had never implemented CONCACAF's own match protocol for addressing discriminatory events (the "Match Protocol" or "Three-Step Match Protocol").

35.     When promptly and fully implemented, the Three-Step Match Protocol has been proven effective at preventing, curbing, and stopping the Discriminatory Chant.

36.     Most recently, the Three-Step Match Protocol was implemented during the Nations League Final between the United States and Mexico at Empower Field in Denver, Colorado on June 6, 2021.   After the match was temporarily suspended in accordance with the Three-Step Match Protocol, the Discriminatory Chant did not occur again.

37.     When responsible stadium officials are committed to promptly and consistently implementing the Three-Step Match Protocol, the Discriminatory Chant has been prevented and/or stopped.

38.     Unfortunately, responsible officials during the 2019 Gold Cup Final failed to implement the Three-Step Match Protocol in response to persistent Discriminatory Chants.

**Plaintiffs Warn Defendants About the Discriminatory Chant**

39.     On July 3, 2019, four days before the Gold Cup Final, Paul C. Burke sent an electronic mail message to Soldier Field's management seeking assurances that responsible officials at Soldier Field intended to comply with the Illinois Human Rights Act by providing LGBT patrons with full and equal enjoyment of the event.

40.     On July 3, 2019, Paul Burke wrote the following email addressed to Soldier Field's Assistant General Manager, Kevin Walsh (kwalsh@soldierfield.net):

FILED DATE: 7/6/2021 2:35 PM   2021L006842

I hold tickets and have plans to attend the Gold Cup Final match this coming Sunday at Soldier Field. I am writing to seek assurances for my safety and dignity at this event. I also seek written assurances that LGBT fans will be afforded full and equal enjoyment of the event in compliance with the Illinois Human Rights Act ("Human Rights Act" or "Act").

The <u>Illinois' Human Rights Act</u> states that "It is a civil rights violation for any person on the basis of unlawful discrimination to: (A) [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." According to the Human Rights Act, "'Unlawful discrimination' means discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service." The Act's definition of a "Place of public accommodation" includes every "motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; [and . . .] auditorium, convention center, lecture hall or other place of public gathering."

Soldier Field is a place of accommodation within the meaning of the Act, which offers express protection to LGBT citizens against unlawful discrimination on the basis of sexual orientation. It follows that LGBT fans are legally entitled to full, equal, and safe enjoyment of any event held at Soldier Field.

It is foreseeable and should be expected that tens of thousands of fans will attempt to participate in homophobic chants at the Gold Cup Final on Sunday at Soldier Field. LGBT fans will not have full, equal, and safe enjoyment of the Gold Cup Final if only LGBT persons are subjected to thunderous chants by thousands of people of a slur based on sexual orientation.

The CONCACAF Gold Cup ("Gold Cup") is sponsored by the Confederation of North, Central American and Caribbean Association Football ("CONCACAF"), which unfortunately has both an extensive and recent history of sponsoring matches that have been marred by large-scale fan misconduct. Over the last decade, the fans of several teams--most notably, the national team of Mexico--have engaged in mass chants of a homophobic slur--"¡eeeh puto!," which is a vulgar term for a male prostitute--that has been predictably screamed when an opponent's goalkeeper prepares to take a goal-kick.

The Puto chant has been a scourge to international soccer over the last decade, but it has been prevented and stopped at other events through the

FILED DATE: 7/6/2021 2:35 PM    2021L006842

use of best practices. For example, during the 2017 Confederations Cup and the 2018 World Cup, the Fédération Internationale de Football Association ("FIFA") successfully deterred fans from engaging in such misconduct. In advance of these tournaments, FIFA conducted educational campaigns that specifically addressed the Puto chant; announced a match protocol for stadium announcements and match suspensions in the event of discriminatory chants; and advised fans that their misconduct could cause their team to suffer from sanctions or even disqualification. FIFA recently issued a circular to its members that formally adopted these procedures for matches during qualifying tournaments for the 2022 World Cup.

Unfortunately, during the 2019 Gold Cup, CONCACAF has taken none of the steps that have been proven effective to combat large-scale homophobic chants by fans. CONCACAF has not contacted ticket buyers or conducted any public education to specifically condemn the Puto chant. During matches thus far during the tournament, CONCACAF has failed to implement its own match protocol for racist and discriminatory events to address pervasive fan misconduct. Homophobic chants have repeatedly thundered through stadiums in Pasadena, California; Denver, Colorado; Charlotte, North Carolina; Houston, Texas; and Phoenix, Arizona during the 2019 Gold Cup tournament without response from CONCACAF, its match commissioners, or any stadium officials. CONCACAF has also failed during the 2019 Gold Cup competition to sanction any team whose fans have engaged in widespread misconduct. As a result, CONCACAF has failed to align the competitive interests of fans to encourage compliance with applicable codes of fan conduct.

Given CONCACAF's persistent failures to prevent and stop homophobic and discriminatory fan misconduct both during the 2019 Gold Cup and at CONCACAF-sponsored events over the last decade, the Chicago Park District ("CPD") and Soldier Field have reason to review their contractual agreements with the promoters and sponsors of the Gold Cup. I encourage you to conduct due diligence by reviewing telecasts from recent matches involving Mexico during the 2019 Gold Cup, including last night's semifinal match against Haiti.

I presume that CPD and Soldier Field would not proceed to host an event if it was reasonably expected that tens of thousands of attendees would repeatedly and uncontrollably engage in racist behavior. It is also hard to imagine that CPD and Soldier Field would allow chants of a racial slur to echo through their facilities without any sanction. Gay slurs are no less worthy of prevention and condemnation. Anti-gay behavior should be addressed with the same seriousness and severity as racist misconduct.

FILED DATE: 7/6/2021 2:35 PM 2021L006842

Assuming that Soldier Field moves forward to host the Gold Cup Final on Sunday, I hope that Soldier Field, the Chicago Park District, and the City of Chicago will make all necessary preparations to fully control the crowd and to promptly stop homophobic fan misconduct, presumably by implementing internationally recognized match protocols by making public announcements and suspending play in order to gain control over fan conduct. If CPD and Soldier Field cannot enforce the facility's Code of Conduct and protect all fans—including LGBT fans—from abuse during the Gold Cup Final, then Sunday's match should either be cancelled, played without spectators, or postponed until all fans can have full, equal, and safe access to the match.

Please provide me with written assurances that CPD and Soldier Field will comply with the Illinois Human Rights Act for the Gold Cup Final. I look forward to receiving prompt written assurances that I and all LGBT fans will receive full, equal, and safe enjoyment of Sunday's match.

Thank you for your prompt attention to these important matters.

Respectfully,
Paul C. Burke

41.     Plaintiff Paul Burke sent a similar warning on July 3, 2019 to CPD General Counsel Timothy M. King through CPD's online portal at CPD's website.

42.     On information and belief, Soldier Field and its management company received the email sent by Paul Burke on July 3. 2019 to Kevin Walsh.

43.     Despite Paul Burke's express request, Soldier Field did not respond to Paul Burke's July 3, 2019 email, nor did Soldier Field furnish any assurance that it would comply with Illinois Human Rights Act during the Gold Cup Final.

44.     Despite Paul Burke's express request, the Chicago Park District did not respond to Paul Burke's July 3, 2019 email, nor did the Park District furnish any assurance that it would comply with Illinois Human Rights Act during the Gold Cup Final.

FILED DATE: 7/6/2021 2:35 PM    2021L006842

**Plaintiffs Attend the Gold Cup Final and Complain About the Discriminatory Chant**

45.     Plaintiffs acquired and used tickets in Section 246, Row 2, Seats 3 through 6 to attend the Gold Cup Final at Soldier Field on July 7, 2019.

46.     Plaintiffs wore official U.S. National Team replica uniforms celebrating Pride Month to the Gold Cup Final.  This Pride clothing, which featured rainbow numbering on the back of each Plaintiff, enabled other attendees as well as stadium officials to identify and associate each Plaintiff with the LGBT community.

47.     Because Plaintiffs were sitting in the second row and often stood to cheer the United States' team, hundreds of Mexico fans sitting behind Plaintiffs in Section 246 and the adjacent Section 249 could see Plaintiffs wearing rainbow colored numbers on their backs and could therefore identify and associate them with the LGBT community.

48.     This Pride clothing also enabled officials at Soldier Field with whom Plaintiffs interacted before, during, and after the game to identify and associate them with the LGBT community.

49.     Although the timing of the Discriminatory Chant was connected to events on the field, some fans near Plaintiffs took note of Plaintiff's Pride clothing and appeared to take pleasure in directing their participation in the Discriminatory Chant towards Plaintiffs.

50.     The first occurrence of the discriminatory chant occurred shortly after the match began at 8:00 PM on July 7, 2019.  Defendants failed to respond to this discriminatory event.

51.     After a second occurrence of the Discriminatory Chant, Plaintiffs sought to report the misconduct by text to the security number published online in the Soldier Field facility guide.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

52.     In response to their plea for assistance to Soldier Field's published security

number, Plaintiffs received the following responses, which included a Double Bird Salute:



53.     On information and belief, Soldier Field's management company has changed

the security number but failed to update the stadium's online guide.  This gross negligence

endangered the dignity and safety of LGBT fans, including Plaintiffs, during an event marred by

repeated mass homophobic misconduct by thousands of Mexico fans.

54.     During the halftime of the match, Plaintiffs also complained about the

Discriminatory Chant to stadium officials and a security guard stationed on the concourse above

their seats.

12

FILED DATE: 7/6/2021 2:35 PM 2021L006842

**Defendants Failed to Address or Stop the Discriminatory Chant During the First Half**

55.     The Discriminatory Chant occurred at or about the 0:33 minutes/seconds mark of the Gold Cup Final match.

56.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 0:33 minutes/seconds mark of the Gold Cup Final match.

57.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 0:33 minutes/seconds mark of the Gold Cup Final match.

58.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 0:33 minutes/seconds mark of the Gold Cup Final match.

59.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 0:33 minutes/seconds mark of the Gold Cup Final match.

60.     The Discriminatory Chant occurred at or about the 4:38 minutes/seconds mark of the Gold Cup Final match.

61.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 4:38 minutes/seconds mark of the Gold Cup Final match.

62.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 4:38 minutes/seconds mark of the Gold Cup Final match.

13

FILED DATE: 7/6/2021 2:35 PM   2021L006842

63.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 4:38 minutes/seconds mark of the Gold Cup Final match.

64.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 4:38 minutes/seconds mark of the Gold Cup Final match.

65.     The Discriminatory Chant occurred at or about the 5:54 minutes/seconds mark of the Gold Cup Final match.

66.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 5:54 minutes/seconds mark of the Gold Cup Final match.

67.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 5:54 minutes/seconds mark of the Gold Cup Final match.

68.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 5:54 minutes/seconds mark of the Gold Cup Final match.

69.     The Discriminatory Chant occurred at or about the 8:00 minutes/seconds mark of the Gold Cup Final match.

70.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 8:00 minutes/seconds mark of the Gold Cup Final match.

71.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 8:00 minutes/seconds mark of the Gold Cup Final match.

14

FILED DATE: 7/6/2021 2:35 PM   2021L006842

72.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 8:00 minutes/seconds mark of the Gold Cup Final match.

73.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 8:00 minutes/seconds mark of the Gold Cup Final match.

74.     The Discriminatory Chant occurred at or about the 10:42 minutes/seconds mark of the Gold Cup Final match.

75.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 10:42 minutes/seconds mark of the Gold Cup Final match.

76.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 10:42 minutes/seconds mark of the Gold Cup Final match.

77.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 10:42 minutes/seconds mark of the Gold Cup Final match.

78.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 10:42 minutes/seconds mark of the Gold Cup Final match

79.     The Discriminatory Chant occurred at or about the 12:10 minutes/seconds mark of the Gold Cup Final match.

80.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 12:10 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM 2021L006842

81.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 10:12 minutes/seconds mark of the Gold Cup Final match.

82.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 10:12 minutes/seconds mark of the Gold Cup Final match.

83.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 12:10 minutes/seconds mark of the Gold Cup Final match

84.     The Discriminatory Chant occurred at or about the 14:10 minutes/seconds mark of the Gold Cup Final match.

85.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 14:10 minutes/seconds mark of the Gold Cup Final match.

86.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 14:10 minutes/seconds mark of the Gold Cup Final match.

87.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 14:10 minutes/seconds mark of the Gold Cup Final match.

88.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 14:10 minutes/seconds mark of the Gold Cup Final match.

16

FILED DATE: 7/6/2021 2:35 PM   2021L006842

89.     The Discriminatory Chant occurred at or about the 14:50 minutes/seconds mark of the Gold Cup Final match.

90.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 14:50 minutes/seconds mark of the Gold Cup Final match.

91.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 14:50 minutes/seconds mark of the Gold Cup Final match.

92.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 14:50 minutes/seconds mark of the Gold Cup Final match.

93.     The Discriminatory Chant occurred at or about the 15:40 minutes/seconds mark of the Gold Cup Final match.

94.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 15:40 minutes/seconds mark of the Gold Cup Final match.

95.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 15:40 minutes/seconds mark of the Gold Cup Final match.

96.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 15:40 minutes/seconds mark of the Gold Cup Final match.

97.     No action was taken by any responsible official of ASM Global to stop the Discriminatory Chant after it occurred approximately at the 15:40 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM    2021L006842

98.      The Discriminatory Chant occurred at or about the 27:40 minutes/seconds mark of the Gold Cup Final match.

99.      The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 27:40 minutes/seconds mark of the Gold Cup Final match.

100.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 27:40 minutes/seconds mark of the Gold Cup Final match.

101.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 27:40 minutes/seconds mark of the Gold Cup Final match.

102.     The Discriminatory Chant occurred at or about the 29:29 minutes/seconds mark of the Gold Cup Final match.

103.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 29:29 minutes/seconds mark of the Gold Cup Final match.

104.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 29:29 minutes/seconds mark of the Gold Cup Final match.

105.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 29:29 minutes/seconds mark of the Gold Cup Final match.

106.     The Discriminatory Chant occurred at or about the 31:51 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM  2021L006842

107.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 31:51 minutes/seconds mark of the Gold Cup Final match.

108.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 31:51 minutes/seconds mark of the Gold Cup Final match.

109.    No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 31:51 minutes/seconds mark of the Gold Cup Final match.

110.    The Discriminatory Chant occurred at or about the 36:25 minutes/seconds mark of the Gold Cup Final match.

111.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 36:25 minutes/seconds mark of the Gold Cup Final match.

112.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 36:35 minutes/seconds mark of the Gold Cup Final match.

113.    No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 36:25 minutes/seconds mark of the Gold Cup Final match.

114.    The Discriminatory Chant occurred at or about the 36:34 minutes/seconds mark of the Gold Cup Final match.

115.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 36:34 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

116.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 36:34 minutes/seconds mark of the Gold Cup Final match.

117.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 36:34 minutes/seconds mark of the Gold Cup Final match.

118.     The Discriminatory Chant occurred at or about the 38:10 minutes/seconds mark of the Gold Cup Final match.

119.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 38:10 minutes/seconds mark of the Gold Cup Final match.

120.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 38:10 minutes/seconds mark of the Gold Cup Final match.

121.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 38:10 minutes/seconds mark of the Gold Cup Final match.

122.     The Discriminatory Chant occurred at or about the 41:52 minutes/seconds mark of the Gold Cup Final match.

123.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 41:52 minutes/seconds mark of the Gold Cup Final match.

124.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 41:52 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

125.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 41:52 minutes/seconds mark of the Gold Cup Final match.

126.     The Discriminatory Chant occurred at or about the 43:40 minutes/seconds mark of the Gold Cup Final match.

127.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 43:40 minutes/seconds mark of the Gold Cup Final match.

128.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 43:40 minutes/seconds mark of the Gold Cup Final match.

129.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 43:40 minutes/seconds mark of the Gold Cup Final match.

**Defendants Failed to Address or Stop the Discriminatory Chant During the Second Half**

130.     Even though the Discriminatory Chant had occurred at least 14 times during the first half of the Gold Cup Final, no action was taken by any responsible official during halftime to address or prevent the Discriminatory Chant from occurring during the second half.

131.     The Discriminatory Chant occurred at or about the 46:00 minutes/seconds mark of the Gold Cup Final match.

132.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 46:00 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM 2021L006842

133.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 46:00 minutes/seconds mark of the Gold Cup Final match.

134.    No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 46:00 minutes/seconds mark of the Gold Cup Final match.

135.    The Discriminatory Chant occurred at or about the 52:22 minutes/seconds mark of the Gold Cup Final match.

136.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 52:22 minutes/seconds mark of the Gold Cup Final match.

137.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 52:22 minutes/seconds mark of the Gold Cup Final match.

138.    No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 52:22 minutes/seconds mark of the Gold Cup Final match.

139.    The Discriminatory Chant occurred at or about the 54:40 minutes/seconds mark of the Gold Cup Final match.

140.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 54:40 minutes/seconds mark of the Gold Cup Final match.

141.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 54:40 minutes/seconds mark of the Gold Cup Final match.

22

FILED DATE: 7/6/2021 2:35 PM    2021L006842

142.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 54:40 minutes/seconds mark of the Gold Cup Final match.

143.     The Discriminatory Chant occurred at or about the 54:43 minutes/seconds mark of the Gold Cup Final match.

144.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 54:43 minutes/seconds mark of the Gold Cup Final match.

145.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 54:43 minutes/seconds mark of the Gold Cup Final match.

146.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 54:43 minutes/seconds mark of the Gold Cup Final match.

147.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 55:58 minutes/seconds mark of the Gold Cup Final match.

148.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 55:58 minutes/seconds mark of the Gold Cup Final match.

149.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 55:58 minutes/seconds mark of the Gold Cup Final match.

150.     The Discriminatory Chant occurred at or about the 57:11 minutes/seconds mark of the Gold Cup Final match.

23

FILED DATE: 7/6/2021 2:35 PM  2021L006842

151.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 57:11minutes/seconds mark of the Gold Cup Final match.

152.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 57:11 minutes/seconds mark of the Gold Cup Final match.

153.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 57:11 minutes/seconds mark of the Gold Cup Final match.

154.     The Discriminatory Chant occurred at or about the 57:39 minutes/seconds mark of the Gold Cup Final match.

155.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 57:39 minutes/seconds mark of the Gold Cup Final match.

156.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 57:39 minutes/seconds mark of the Gold Cup Final match.

157.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 57:39 minutes/seconds mark of the Gold Cup Final match.

158.     The Discriminatory Chant occurred at or about the 58:56 minutes/seconds mark of the Gold Cup Final match.

159.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 58:56 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM    2021L006842

160.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 58:56 minutes/seconds mark of the Gold Cup Final match.

161.    No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 58:56 minutes/seconds mark of the Gold Cup Final match.

162.    The Discriminatory Chant occurred at or about the 70:30 minutes/seconds mark of the Gold Cup Final match.

163.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 70:30 minutes/seconds mark of the Gold Cup Final match.

164.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 70:30 minutes/seconds mark of the Gold Cup Final match.

165.    No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 70:30 minutes/seconds mark of the Gold Cup Final match.

166.    The Discriminatory Chant occurred at or about the 82:38 minutes/seconds mark of the Gold Cup Final match.

167.    The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 82:38 minutes/seconds mark of the Gold Cup Final match.

168.    No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 82:38 minutes/seconds mark of the Gold Cup Final match.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

169.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 82:38 minutes/seconds mark of the Gold Cup Final match.

170.     The Discriminatory Chant occurred at or about the 90:45 minutes/seconds mark of the Gold Cup Final match.

171.     The Three-Step Match Protocol was not implemented after the Discriminatory Chant occurred at approximately the 90:45 minutes/seconds mark of the Gold Cup Final match.

172.     No action was taken by any responsible official at Soldier Field to stop the Discriminatory Chant after it occurred approximately at the 90:45 minutes/seconds mark of the Gold Cup Final match.

173.     No action was taken by any responsible official of the Chicago Park District to stop the Discriminatory Chant after it occurred approximately at the 90:45 minutes/seconds mark of the Gold Cup Final match.

**Summary of Discriminatory Chants during Gold Cup Final**

174.     The Discriminatory Chant occurred at least 25 times during the Gold Cup Final match at Soldier Field.

175.     The Discriminatory Chant occurred as many as 28 times during the Gold Cup Final at Soldier Field.

176.     The Three-Step Match Protocol was never implemented during the Gold Cup Final match at Soldier Field.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

177.    No action was taken at any time by any responsible official at Soldier Field to stop the Discriminatory Chant even though it occurred more than 25 times during the Gold Cup Final match.

178.    No action was taken at any time by any responsible official of ASM Global to stop the Discriminatory Chant even though it occurred more than 25 times during the Gold Cup Final match.

179.    No action was taken at any time by any responsible official of the Chicago Park District to stop the Discriminatory Chant even though it occurred more than 25 times during the Gold Cup Final match.

180.    No responsible official at Soldier Field took any action to address or stop the Discriminatory Chants during the Gold Cup Final.

181.    On information and belief, at least one representative of the Chicago Park District was present at Soldier Field during the Gold Cup Final.

182.    No representative of the Chicago Park District took any action during the Gold Cup Final to address or stop the Discriminatory Chant during the Gold Cup Final.

183.    The Management Contract requires ASM Global to have a least one representative present at every event at Soldier Field.

184.    On information and belief, at least one representative of ASM Global was present at Soldier Field during the Gold Cup Fina.

185.    No official of ASM Global present at the Gold Cup Final took any action to address or stop the Discriminatory Chants.

186.    The Discriminatory Chant constitutes a violation of Soldier Field's Code of Conduct.

27

FILED DATE: 7/6/2021 2:35 PM   2021L006842

187.   Soldier Field's Code of Conduct states, in pertinent part:

"Proper behavior is expected of all guests of Soldier Field. Unruly or inconsiderate behavior will not be tolerated and may be grounds for ejection from the stadium, revocation of ticket privileges, and subject to civil action and criminal action. Such behavior includes, but is not limited to:  intoxication, profane, disruptive or abusive language or gestures, offensive or disorderly conduct, throwing objects, excessive standing in the seating area, smoking anywhere in the stadium, bringing any prohibited items into the stadium, entering or attempting to enter the field level or playing field. Guests who cannot conform their conduct to these rules are not welcome to Soldier Field."

188.   Although the Discriminatory Chant violates Soldier Field's Code of Conduct, no action was taken during the Gold Cup Final by Soldier Field or its management company to enforce the Code of Conduct against any fan who participated in the Discriminatory Chant.

189.   On information and belief, fans have been ejected or otherwise disciplined at other sporting events at Soldier Field for violating the Code of Conduct by engaging in offensive or disorderly conduct, including the use of racial slurs.

190.   The Discriminatory Chant also constitutes disorderly conduct in violation of Illinois law.

191.   On information and belief, fans have been ejected from other sporting events at Soldier Field for using racial slurs and have been prosecuted for disorderly conduct.

192.   No fan who attended the Gold Cup Final was ejected or discipled for participating in the homophobic chant.

193.   No fan who attended the Gold Cup Final was charged or prosecuted for disorderly conduct for having participated in the Discriminatory Chant.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

**Defendants Abrogated Their Legal Duties**

194.    On information and belief, despite having legal and contractual duties to enforce the law (including the Illinois Human Rights Act) and to provide for the safety of all fans, the Chicago Park District, Soldier Field, and its management company surrendered control over Soldier Field to CONCACAF, a soccer organization with an extensive history of hosting events marred by homophobic misconduct.

195.    The Chicago Park District, Soldier Field, and its management company surrendered control over Soldier Field's scoreboards and public address systems to CONCACAF during the Gold Cup Final.

196.    Even after numerous Discriminatory Chants occurred during the Gold Cup Final without being addressed, the Chicago Park District, Soldier Field, and its management company failed to assert control over Soldier Field's scoreboards and public address systems.

197.    Even after numerous Discriminatory Chants occurred during the Gold Cup Final without being addressed, the Chicago Park District, Soldier Field, and its management company failed to assert control over Soldier Field in order to stop discriminatory behavior from occurring in violation of the Illinois Human Rights Act.

**The Aftermath**

198.    The discriminatory events that occurred during the Gold Cup Final establish that ASM Global not only violated the Illinois Human Rights Act but also materially breached the Management Contract.

FILED DATE: 7/6/2021 2:35 PM   2021L006842

199.     Section 19.2 (Anti-Discrimination) of the Management Contract states that "[ASM Global] shall not discriminate on the basis of ... sexual orientation with respect to . . . providing services under this Agreement...."

200.     Section 19.28 (Compliance) of the Management Contract provides that ASM Global "must comply with all federal, state, county, and municipal laws, statutes, ordinances and executive orders in effect now or later and whether or not they appear in this Agreement."

201.     On information and belief, Chicago Park District, Soldier Field, and its management company would not allow a racial slur such as the N-word to be chanted repeatedly by fans at any event at Soldier Field without any remediated action.

202.     Yet the Chicago Park District and ASM Global allowed an anti-gay slur to repeatedly thunder from Soldier Field during the Gold Cup Final to an international broadcast audience.

203.     On information and belief, the Chicago Park District would terminate the Management Contract if ASM Global failed to stop mass chants of the N-word from occurring during a sports event at Soldier Field.

204.     ASM Global failed to stop mass chants of a homophobic slur during the Gold Cup Final.

205.     The Chicago Park District has not terminated the Management Contract with ASM Global even though a global audience witnessed homophobic violations of the Illinois Human Rights Act.

206.     The Chicago Park District has not terminated the Management Contract with ASM Global even though ASM Global materially breached its obligations under Section 19.2 (Anti-Discrimination) of the Management Contract during the Gold Cup Final.

FILED DATE: 7/6/2021 2:35 PM    2021L006842

207.    The Chicago Park District has not terminated the Management Contract with ASM Global even though ASM Global materially breached its obligations under Section 19.28 (Compliance) of the Management Contract during the Gold Cup Final.

208.    Even after the Illinois Department of Human Rights investigated and found substantial evidence that Soldier Field and its management company had violated the Illinois Human Rights Act, the Chicago Park District has not terminated the Management Contract.

209.    By failing to terminate the Management Contract, the Chicago Park District has not only violated its public trust but has further violated by the Illinois Human Rights Act.

210.    By failing to terminate the Management Contract after ASM Global discriminated on the basis of sexual orientation against Plaintiffs and the LGBT community, the Chicago Park District has failed to take necessary and appropriate action to prevent further violations of the Illinois Human Rights Act during international soccer matches at Soldier Field.

## FIRST CAUSE OF ACTION

### (Violation of the Illinois Human Rights Act –

### Public Accommodations Discrimination Based on Sexual Orientation)

211.    Plaintiffs incorporate by reference each of the preceding paragraphs.

212.    Soldier Field is a place of public accommodation within the meaning of the Illinois Human Rights Act.

213.    Chicago Park District is an owner and operator of Soldier Field within the meaning of the Illinois Human Rights Act.

214.    ASM Global is an operator of Soldier Field within the meaning of the Human Rights Act.

31

FILED DATE: 7/6/2021 2:35 PM   2021L006842

215.     Under the Illinois Human Rights Act, Plaintiffs can establish a *prima facie* case for public accommodation discrimination by showing that each plaintiff: (1) is a member of a protected class; (2) attempted to exercise his right to full benefits and enjoyment of Defendants' facilities; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons outside his protected class.

216.     Plaintiffs LCDR Penland, Gerner, and Paul C. Burke are gay men entitled to protection against discrimination based on sexual orientation at places of public accommodation in Illinois.

217.     When he attended the Gold Cup Final at Soldier Field, Plaintiff Edward Burke sat with and affiliated throughout the match with three gay men. Plaintiff Edward Burke believes that he was perceived as a gay man as a result by both other attendees and the officials at Soldier Field with whom he interacted before, during, and after the game. Edward Burke is entitled to protection against discrimination based on his association with LGBT persons at places of public accommodation in Illinois.

218.     Plaintiff Edward Burke also wore official U.S. National Team gear celebrating Pride Month to the Gold Cup Final and believes that he was perceived as a gay man as a result by both other attendees and the officials at Soldier Field with whom he interacted before, during, and after the game. Edward Burke is entitled to protection against discrimination based on his perceived sexual orientation and his association with LGBT persons at places of public accommodation in Illinois.

219.     Plaintiffs attempted to exercise their rights to the full benefits and enjoyment of Defendants' facilities by purchasing tickets and attending the Gold Cup Final at Soldier Field on July 7, 2019.

32

FILED DATE: 7/6/2021 2:35 PM   2021L006842

220.     Plaintiffs attempted to exercise their rights to the full benefits and enjoyment of Defendants' facilities by providing the management of Soldier Field and the general counsel of the Chicago Park District with advance written warning of the expected misconduct by Mexico fans.

221.     Plaintiffs further attempted to exercise their rights to the full benefits and equal enjoyment of Defendants' facilities by promptly complaining via text about pervasive fan misconduct using the security number published by Solder Field on its website.  Plaintiffs also complained about the discriminatory conduct to stadium and security officials stationed, among other places, on the concourse above their seats.

222.     As a ticket-holders and attendees of the Gold Cup Final at Soldier Field, each Plaintiff was entitled to the full and equal enjoyment of this event, which was denied to Plaintiffs because Defendants subjected them to unaddressed homophobic misconduct by other fans.

223.     The Chicago Park District, Soldier Field, and its management company discriminated against LCDR Penland, Karl Gerner, Edward Burke, and Paul Burke as well as similarly situated LGBT fans by failing to take necessary actions to protect LGBT patrons from anti-gay misconduct by the overwhelming majority of Mexico team supporters during the Gold Cup Final.

224.     Plaintiffs were denied their right to full benefit and equal enjoyment of the Gold Cup Final because the Chicago Park District, Soldier Field, and its management company failed in their respective duties to regulate fan conduct to protect the safety and dignity of LGBT fans.

FILED DATE: 7/6/2021 2:35 PM 2021L006842

225. As gay men, LCDR Penland, Gerner, and Paul Burke were denied full and equal enjoyment of Defendant's facilities at Soldier Field during the Gold Cup because they were exposed to more than two dozen Discriminatory Chants.

226. Because he associated with gay men and his clothing caused others to perceive him to be a gay men, Edward Burke was denied full and equal enjoyment of Defendant's facilities at Soldier Field during the Gold Cup because he was exposed to more than two dozen Discriminatory Chants.

227. The Chicago Park District, Soldier Field, and its management company failed to prevent and failed to stop persistent fan misconduct that targeted and stigmatized gay persons during the Gold Cup Final. LGBT fans were treated less favorably than straight fans because the Chicago Park District, Soldier Field, and its management company did not stop anti-gay slurs from being chanted repeatedly by supporters of Mexico's national team.

228. LGBT fans including LCDR Penland, Gerner, and Paul Burke were predictably and repeatedly subjected to chants of a Spanish-language anti-gay slur by tens of thousands of supporters of Mexico's national team who dominated the crowd at Soldier Field. Straight persons were not similarly targeted or subjected to any similar unaddressed fan misconduct based on sexual orientation during the Gold Cup Final.

229. As gay men, LCDR Penland, Karl Gerner, and Paul Burke were treated less favorably than straight persons because the Chicago Park District, Soldier Field, and its management company failed to enforce Soldier Field's Code of Conduct when anti-gay misconduct occurred repeatedly at the Gold Cup Final soccer match.

230. This failure not only damaged the dignity of LGBT persons during the Gold Cup Final but it also endangered them, since the repeated failures of responsible authorities to

34

FILED DATE: 7/6/2021 2:35 PM  2021L006842

protect LGBT fans from discriminatory fan misconduct created a hostile and dangerous atmosphere for LGBT persons.

231.     This failure particularly endangered fans like Edward Burke, Paul Burke who were wearing official U.S. National Team gear celebrating Pride Month that had the effect of identifying or associating them with the LGBT community.

232.     As a result of discrimination based on sexual orientation by each Defendant, each Plaintiff was denied his rights under Illinois law to the full benefit and equal enjoyment of the Gold Cup Final soccer match.

## SECOND CAUSE OF ACTION

### (Civil Conspiracy to Commit a Hate Crime –

### Hate Crime Based on Disorderly Conduct)

233.     Plaintiffs incorporate by reference each of the preceding paragraphs.

234.     Fans of Mexico's national team repeatedly and thunderously shouted the Discriminatory Chant with the explicit purpose to alarm or disturb the players of the United States Men's National Team and its fans, including Plaintiffs, and to provoke a breach of the peace.

235.     Disorderly Conduct is a predicate offense under the Illinois Hate Crimes Act.

236.     Under the Illinois Hate Crimes Act, for each of the twenty-eight Discriminatory Chants, each Plaintiff may be entitled to an amount up to the maximum amount authorized by Section 12-7.1(c) of the Illinois Criminal Code

237.     The Discriminatory Chant by which fans of Mexico's national team repeatedly and thunderously committed disorderly conduct was motivated by the protected characteristics gender, gender identity, or sexual orientation.

35

FILED DATE: 7/6/2021 2:35 PM    2021L006842

238.     Defendants were subjected to the Discriminatory Chant no less than 28 times.

239.     Defendants were subjected to the Discriminatory Chant because of their actual or perceived gender, gender identity, or sexual orientation.

240.     Defendants were subjected to disorderly conduct with each Discriminatory Chant based on their actual or perceived gender, gender identity, or sexual orientation.

241.     Defendants Soldier Field, the Chicago Park District, ASM Global, and fans of Mexico's national team are each persons under the law.

242.     Defendant Soldier Field sought to hold the Gold Cup Final under anti-LGBT conditions through unlawful means because it was warned and knew that holding the Gold Cup Final while taking no preventative measures would cause fans of Mexico's national team to repeatedly engage in Disorderly Conduct through the Discriminatory Chant.

243.     Defendant the Chicago Park District sought to hold the Gold Cup Final under anti-LGBT conditions through unlawful means because it was warned and knew that holding the Gold Cup Final while taking no preventative measures would cause fans of Mexico's national team to repeatedly engage in Disorderly Conduct through the Discriminatory Chant.

244.     Defendant ASM Global sought to hold the Gold Cup Final under anti-LGBT conditions through unlawful means because it was warned and knew that holding the Gold Cup Final while taking no preventative measures would cause fans of Mexico's national team to repeatedly engage in Disorderly Conduct through the Discriminatory Chant.

245.     Fans of Mexico's national team each sought to hold the Gold Cup Final under anti-LGBT conditions through unlawful means because they knew that holding the Gold Cup Final while Plaintiffs Soldier Field, Chicago Parks District, and ASM Global took no

FILED DATE: 7/6/2021 2:35 PM   2021L006842

preventative measures would allow fans of Mexico's national team to repeatedly engage in Disorderly Conduct through the Discriminatory Chant.

246.     Fans of Mexico's national team did repeatedly and thunderously commit disorderly conduct by using the Discriminatory Chant, in furtherance of the conspiracy to hold the Gold Cup Final under anti-LGBT conditions.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.     For all Make Whole relief as authorized by Section 8A-104(J) of the Illinois Human Rights Act by taking "any action as may be necessary" in order to make Plaintiffs whole, including but not limited to the award of actual, compensatory, and general damages;

2.     For a Cease and Desist Order as authorized by Section 8A-104(A) of the Illinois Human Rights Act commanding Defendants to cease and desist from violating the Act by failing to protect LGBT patrons from homophobic abuse by other patrons during events at Soldier Field;

3.     For a Cease and Desist Order as authorized by Section 8A-104(A) of the Illinois Human Rights Act commanding Defendants to extend to Plaintiffs and all similarly situated LGBT patrons the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Defendants, including but not limited to Soldier Field;

4.     For an Order as authorized by Section 8A-104(F) of the Illinois Human Rights Act commanding Defendants to extend to Plaintiffs and all similarly situated LGBT patrons the

FILED DATE: 7/6/2021 2:35 PM    2021L006842

full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Defendants, including but not limited to Soldier Field;

5.      For an Order as authorized by Section 8A-104(F) of the Illinois Human Rights Act or a permanent injunction requiring Defendants to comply with the Illinois Human Rights Act by protecting LGBT patrons from homophobic abuse by other patrons during all events at Soldier Field;

6.      For all actual damages of Plaintiffs as authorized by Section 8A-104(B) of the Illinois Human Rights Act;

7.      For a civil penalty in an amount in excess of $75,000 authorized by Section 12-7.1(c) of the Illinois Criminal Code.

8.      Actual damages, including emotional distress damages in an amount to be determined by a jury as authorized by Section 12-7.1(c) of the Illinois Criminal Code.

9.      For punitive damages in an amount to be determined by a jury as authorized by Section 12-7.1(c) of the Illinois Criminal Code

10.     For a civil penalty of $2,600,000 as authorized by Section 12-7.1(c) of the Illinois Criminal Code.

11.     For punitive damages in the amount of $2,600,000 as authorized by Section 12-7.1(c) of the Illinois Criminal Code.

12.     For all attorney fees incurred by Plaintiffs both during this action and during the pendency of their charges before the Illinois Department of Human Rights, as authorized by Section 8A-104(G) of the Illinois Human Rights Act;

FILED DATE: 7/6/2021 2:35 PM   2021L006842

13.     For all costs, including expert witness fees, incurred by Plaintiffs both during this action and during the pendency of their charges before the Illinois Department of Human Rights, as authorized by Section 8A-104(G) of the Illinois Human Rights Act;

14.     For all attorney fees and costs as appropriate;

15.     For all costs and expenses of collection incurred through the collection of judgment, including reasonable attorney fees and legal expenses; and,

16.     For any other relief as the Court deems just and proper.

DATED this 6th day of July, 2021.


SCHOENBERG FINKEL BEEDERMAN BELL GLAZER LLC

/s/   *Mark A. Flessner*
Mark A. Flessner

*Attorneys for Plaintiffs*


Mark A. Flessner
SCHOENBERG FINKEL BEEDERMAN
  BELL GLAZER LLC
300 S. Wacker Drive, Suite 1500
Chicago, Illinois 60606
Telephone: (312) 648-2300
Fax: (312) 648-1212
Mark.Flessner@sfbbg.com

*Attorneys for Plaintiffs*