**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JORDAN PENLAND, KARL GERNER, EDWARD R. BURKE, AND PAUL C. BURKE, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Judge John Robert Blakey |
| | ) | |
| vs. | ) ) | Case No. 1:21-cv-05581 |
| | ) | |
| CHICAGO PARK DISTRICT, SOLDIER FIELD, and ASM GLOBAL, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendants SMG d/b/a ASM Global ("SMG") (erroneously named and served as "ASM Global") and the Chicago Park District (simultaneously and erroneously named and served as "Soldier Field") (the "Park District"), respectfully move this Court for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the Second Cause of Action ("Count Two") of Plaintiffs' First Amended Complaint ("FAC") against both SMG and the Park District, and dismissing the First Cause of Action ("Count One") against the Park District.

## INTRODUCTION

Plaintiffs Jordan Penland, Karl Gerner, Edward Burke, and Paul Burke (collectively "Plaintiffs") go to great lengths in their FAC to make it seem as if SMG, the Park District (each individually "Defendant" and collectively "Defendants") and Soldier Field[1] engaged in a grand conspiracy to permit "fans of Mexico national soccer team" to chant a

---

[1] Soldier Field is not a separate legal entity capable of being sued, but rather a Park District facility that is marketed and operated under the name Soldier Field. References herein to the Park District as a Defendant are inclusive of Soldier Field throughout, and Soldier Field should be dismissed as a party to this action.

homophobic slur (the "Chant") at a soccer match in 2019. As in the original complaint, nothing about this conspiracy claim is plausible.

As an initial matter, the IHRA preempts Plaintiffs' civil conspiracy claim. But even if it did not, the claim fails for multiple reasons. First, Plaintiffs fail to identify *any* agreement between Defendants. They merely speculate that Defendants engaged in contractual negotiations, likely knew about the Chant, and therefore must have conspired to permit the Chant during those negotiations. Plaintiffs also fail to allege *any* overt act in furtherance of the conspiracy. Instead, Plaintiffs allege mere inaction, which is fatal to a conspiracy claim. Brash and uncouth as the Chant may be, Plaintiffs' FAC relies on speculative allegations that courts routinely reject when analyzing a Rule 12(b)(6) motion as failing to support a civil conspiracy claim. And for good reason; allowing such claims to survive would permit any would-be-plaintiff to file a civil conspiracy claim against any person accidentally, inadvertently, or even negligently, caught up in a third party's misconduct.

In addition, Plaintiffs' claims against the Park District are barred by the Illinois Tort Immunity Act, which shields the Park District from liability for any alleged failure to act to prevent violations of law. When stripped of its hyperbole, that is exactly what Plaintiffs' FAC seeks to do here – hold the Park District liable for allegedly not enforcing the IHRA. For these reasons, Count Two should be dismissed with prejudice against all Defendants, and Count One should be dismissed with prejudice against Park District.

## **BACKGROUND**

### I.   **Procedural Posture**

Plaintiffs' FAC asserts two causes of action. Count One alleges public accommodations discrimination based on sexual orientation under the IHRA. [Compl. ¶¶ 211–

2

32.]  Count Two alleges a civil conspiracy between Defendants to violate the IHRA.  [Compl. ¶¶ 175–84.]

Plaintiffs initially filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") alleging two violations of the IHRA against the Park District.  [Compl. ¶ Intro.]  Plaintiffs alleged that (1) the Park District engaged in public accommodations discrimination based on sexual orientation (homosexual), and (2) based national origin (USA). [Plaintiff's Ex. HH at 10, 21.]  Pursuant to the contractual arrangement between SMG and the Park District, SMG and the Park District jointly responded to the charge.  [*Id.*; Compl. ¶¶ 7, 26.]

On or about April 21, 2021, the IDHR issued Notices of Substantial Evidence and Dismissal, after which Plaintiffs commenced this action on or about July 6, 2021.  [*Id.*]  On October 27, 2021, Defendants filed a partial motion to dismiss and, in response, Plaintiffs filed the FAC.  [Dkt. 7, 29.]

## II.   **Factual Allegations**[2]

### A.   **The Management Contract, The Events Contract, And CONCACAF's Three Step Match Protocol**

The Park District, a municipal corporation, contracts with SMG to provide operations and management services at the Park District's Soldier Field facility under a management contract (the "Management Contract").  [Compl. ¶ 30.]  Among other things, the Management Contract requires SMG to provide "security, crowd, management, and medical services at [Soldier Field] for the customers, employees, visitors, and users."  [Compl. ¶ 31.]  It also requires SMG and the Park District to comply with all applicable laws.  [*Id.*]

---

[2]  For the purposes of this Motion, Defendants take the allegations in the FAC as true under applicable legal standards.  Nothing contained herein, however, shall be construed as an admission as to the truth or veracity of any allegation in the FAC.  Defendants reserve the right to deny any and all allegations made in the FAC, assert all relevant defenses, and assert any relevant counter- or cross-claims.

In turn, SMG entered into an events contract (the "Events Contract") with the Soccer United Marketing, LLC, an agent of the Confederation of North, Central America and Caribbean Association Football ("CONCACAF"). [Compl. ¶ 37.] CONCACAF presented the July 7, 2019 Gold Cup Final (the "Gold Cup Final") soccer match at Soldier Field, between the national teams of Mexico and the United States. [*Id.*]

According to Plaintiffs, CONCACAF has a "match protocol" for addressing discriminatory events (the "Three Step Match Protocol") during soccer matches it sponsors. [Compl. ¶ 42.] The Three Step Match Protocol should be used when event attendees engage in disruptive chants or other conduct. [*Id.*] The Three Step Match Protocol involves suspending the match and waiting for the attendees to stop engaging in undesired conduct. [Compl. ¶ 48.]

Plaintiffs allege that CONCACAF did not at the time consistently implement the protocol. [Compl. ¶ 42.] Plaintiffs also allege that Defendants were aware of CONCACAF's inconsistent history of enforcing the Three Step Match Protocol at the time SMG contracted with CONCACAF to host the Gold Cup Final. [*Id.*]

**B.    Plaintiffs Attended The Gold Cup Final And Were Allegedly Subjected To Discriminatory Conduct**

On July 7, 2019, Plaintiffs attended the Gold Cup Final at Soldier Field. [Compl. ¶ 58.] During the match, some of the "supporters" or "fans" of Mexico's national team used a chant in Spanish that, in English, can translate to "male prostitute" or something similar. [Compl. ¶ 19.] The Chant has homophobic connotations that team Mexico's fans use when the opposing team takes a goal kick. [Compl. ¶¶ 19–22.]

Prior to the Gold Cup Final, in a letter to Soldier Field's Assistant General Manager, Plaintiff Paul Burke allegedly notified the Park District of his plan to attend the Gold Cup Final, and discussed the history of the Chant and CONCACAF's failure to prevent it.

4

[Compl. ¶ 48.] Paul Burke sent a similar message through the Park District's online portal to the Park District's general counsel. [Compl. ¶ 49.] In his letter, Paul Burke stated that he anticipated the Chant would occur during the Gold Cup Final and that he viewed the Chant as unlawful, and sought written assurance that "LGBT fans [would] be afforded full and equal enjoyment of the event in compliance with the [law]." [Compl. ¶ 48.]

Despite this purported warning, attendees of the Gold Cup Final allegedly used the Chant approximately twenty-eight times during the match. [Compl. ¶ 125.] Plaintiffs, dressed in clothing celebrating LGBT pride and displaying rainbow colored numbers, allege that "hundreds of Mexico fans" could identify and associate them with the LGBT community and some appeared to direct their use of the Chant toward them. [Compl. ¶ 61.]

After Plaintiffs witnessed the Chant, they purportedly sought to report it to Soldier Field via text message using a number published in the online facility guide; that number, according to Plaintiffs, was incorrect. [Compl. ¶¶ 69–71.] So, at halftime, Plaintiffs allegedly reported the Chant to "stadium officials and a security guard." [Compl. ¶ 117.] Notwithstanding Plaintiffs' reports, the Chant allegedly continued to be used after halftime. [Compl. ¶ 161.] To Plaintiffs' knowledge, no action was taken by Defendants or CONCACAF to stop the Chant. [Compl. ¶ 168.] Plaintiffs conclude that the Defendants "unlawfully agreed among themselves and with [unidentified] others to host the Gold Cup Final without taking reasonable and appropriate steps to prevent, address, or stop predictable and foreseeable sexual orientation discrimination." [Compl. ¶ 181.]

## LEGAL STANDARD

A court considering a Rule 12(b)(6) motion to dismiss accepts all well-pleaded allegations in the complaint as true and draws all inferences in the light most favorable to the

plaintiff. *De David v. Alaron Trading Corp.*, 796 F. Supp. 2d 915, 920 (N.D. Ill. 2010). "The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the 'speculative level.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Dismissal under Rule 12(b)(6) is warranted if the complaint fails to establish that the requested relief is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 544, 555 (2009)). Whether to dismiss a claim with prejudice is committed to the discretion of the court, but is appropriate when "it is clear that the defect cannot be corrected" and that therefore an "amendment is futile." *Davis v. MRS BPO, LLC*, No. 15-2303, 2015 WL 4326900, at *3 (N.D. Ill. July 15, 2015) (quoting *Runnion v. Girl Scouts of Great Chi. & Nw. Ind.*, 768 F.3d 510, 520 (7th Cir. 2015)); *Johns v. Morris*, 777 F.2d 1277, 1279 (7th Cir. 1985).

## ARGUMENT

### I. Plaintiffs' Civil Conspiracy Claim Is Preempted By The Illinois Human Rights Act

Plaintiffs' Count Two should be dismissed because it is preempted by the IHRA. *E.g.*, *Veazey v. LaSalle Telecomm., Inc.*, 779 N.E.2d 364, 371 (Ill. App. Ct. 2002).

The Illinois Supreme Court has repeatedly held that the IHRA "provides the exclusive source of redress for alleged civil rights violations." *Veazey*, 779 N.E.2d at 371; 775 ILCS 5/8-111(c). A common law action is preempted when it "is in essence one which seeks redress for a 'civil rights violation' as defined in the [IHRA]". *Nance v. Rothwell*, No. 09-c-7733, 2011 WL 1770306, at *11–12 (N.D. Ill. May 9, 2011) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997)). The preemption inquiry turns on whether a plaintiff "can prove the elements of [their claim] independent of the legal duties furnished by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006).

Where plaintiffs have asserted common law conspiracy claims, alleging a conspiracy to violate the IHRA, courts routinely dismiss, finding preemption under the IHRA. *Veazey*, 779 N.E.2d at 371 (civil conspiracy claim preempted by the IHRA where plaintiff alleged a civil conspiracy to terminate plaintiff's employment based on race); *Nance*, 2011 WL 1770306, at *12 (civil conspiracy claim preempted by the IHRA where plaintiff alleged a civil conspiracy rooted in race, sex, and age discrimination); *Lopez v. Child.'s Mem'l Hosp.*, No. 02-C-3598, 2002 WL 31898188, at *7 (N.D. Ill. Dec. 31, 2002). (civil conspiracy claim preempted by the IHRA where plaintiff alleged a civil conspiracy to terminate him based on race and age). These holdings make good sense; a plaintiff cannot prove a civil conspiracy to violate the IHRA "independent of the legal duties furnished by the IHRA." *Naeem*, 444 F.3d at 604.

Here, Plaintiffs cannot prove the elements of their conspiracy claim independent of the IHRA. Instead, their conspiracy claim seeks redress for an alleged violation of the IHRA. In fact, unlike the plaintiffs in the cases described above, who alleged conspiracies to engage in conduct that, when analyzed, turned out to be conduct covered by the IHRA, Plaintiffs' FAC states forthright that the conspiracy alleged is a conspiracy to violate the IHRA. What is more, a conspiracy to violate the IHRA is, itself, cognizable under the IHRA. 775 ILCS 5/6-101(B). In other words, a defendant either violates the IHRA or not; a common law conspiracy to violate it is no different because the alleged conduct also violates the statute.

To be sure, even if Plaintiffs had lodged a statutory claim for conspiracy under 775 ILCS 5/6-101(B), the claim would fail for Plaintiffs' failure to exhaust their administrative remedies, because Plaintiffs failed to include such a claim in their administrative charges, and do not allege to have included such a claim in their administrative charges. *See Herrera v. Di Meo Bros.*, Inc., 529 F. Supp. 3d 819, 827 (N.D. Ill. 2021) (discussing administrative exhaustion).

7

Accordingly, Count Two should be dismissed with prejudice because it is preempted by the IHRA.

**II.    Plaintiffs Have Not Established A _Prima Facie_ Civil Conspiracy Claim**

To prove civil conspiracy, a plaintiff must show "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act." _Fritz v. Johnson_, 807 N.E.2d 461, 470 (Ill. 2004). A civil conspiracy claim extends liability beyond an active wrongdoer to those who have "encouraged, aided, or helped plan" the wrongdoer's acts. _Miller v. Hecox_, 969 N.E.2d 914, 924 (Ill. App. 2d 2012). Because civil conspiracy is an intentional tort, "accidental, inadvertent, or [even] negligent participation in a common scheme does not amount to a conspiracy." _Mohammed v. Hamdard Ctr. for Health & Hum. Servs._, 2020 Ill. App. 2d 181017-U (Ill. App. Ct. 2020); _see also McClure v. Owens Corning Fiberglas Corp._, 720 N.E.2d 242, 258 (Ill. 1999). Further, "[m]ere knowledge of . . . illegal actions of another is . . . not enough to show a conspiracy." _McClure_, 720 N.E.2d at 188 Ill. 2d at 258. It is thus essential that there be an **_agreement_** to accomplish an unlawful act – something more than mere conclusory allegations that there was a conspiracy between actors. _Mohammed_, 2020 IL App (2d) 181017-U, at ¶45.

**A.    Defendants' Purported Knowledge Of Past Use Of The Chant Is Insufficient To State A Civil Conspiracy Claim**

Plaintiffs attempt to make hay about the "knowledge" that Defendants allegedly had about the propensity of Mexico's fans to use the Chant during matches, but fail to connect that alleged knowledge to any _intent_ or _agreement_ Defendants had to engage in the purported conspiracy. Setting aside the presumptuous conclusion that Defendants possessed such knowledge – an allegation based primarily on various news articles, not on actual knowledge –

8

that knowledge alone would be insufficient to state a conspiracy claim. An intent to act on such knowledge would be required. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) ("[A] civil conspiracy is based upon intentional activity, [and] the element of intent is [only] satisfied when a defendant knowingly and voluntarily participates in a common scheme").

Moreover, even considering the fact that Defendants are parties to the Management Contract and Events Contract, Plaintiffs do not and cannot allege any form of agreement between Defendants related to the Chant. At most, they can speculate that contractual negotiations took place and that those negotiations may have involved discussion about security. To conclude, however, that those negotiations *must have* involved an agreement to permit the fans of Mexico to engage in the Chant is quintessential speculation. In other words, nothing expressly or impliedly demonstrates an intent on Defendants' part to engage in the conspiracy to violate the IHRA, regardless of any knowledge they purportedly had.

To infer anything more from Plaintiffs' conclusory allegations than the "accidental, inadvertent, or negligent participation" of the Defendants in the purported scheme would be to create facts where none exist. "The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maint.*, 694 N.E.2d 565, 571 (Ill. 1998); *see also Twombly*, 550 U.S. at 555–56 (a complaint must bring the right to relief above the speculative level). Plaintiffs fail to allege any intent to participate in the alleged conspiracy, let alone any tacit agreement to do so, and no reasonable inferences to the contrary can be drawn from the facts as alleged in the FAC.

Courts routinely dismiss civil conspiracy claims for failure to identify an agreement between the defendants (*i.e.*, the who, what, where, or when of the agreement) – and rightly so. *See, e.g.*, *Peterson v. A Clear Title & Escrow Exch.*, No. 14-cv-09932, 2017 WL

9

1134483, at *4 (N.D. Ill. Mar. 27, 2017) (dismissing a civil conspiracy claim where plaintiff failed to identify the who, when, or what of the agreement). Absent an agreement, the tort of civil conspiracy could extend to the extreme, implicating innocent actors in others' misconduct.

For example, the plaintiff in *Independent Trust Corp. v. Stewart Information Services Corp.*, alleged a civil conspiracy to misappropriate funds. The plaintiff, Independent Trust Corporation, ("Independent") was a trustee for thousands of trust accounts. 665 F.3d 930 (7th Cir. 2012). Two of its directors, Laurence Capriotti and Jack Hargrove, ran a separate company called Intercounty. *Id.* at 933. Intercounty operated as an agent of the defendants, Stewart Information Services Corporation, Stewart Title Guaranty Company, and Stewart Title Company (collectively "Stewart"). *Id.* As part of its business, Intercounty managed an escrow account, which Stewart agreed to insure. *Id.* It turned out, however, that Capriotti and Hargrove were essentially managing the escrow account as a Ponzi scheme, and were misappropriating Independent's funds to fill the escrow shortages. *Id.*

Independent alleged Stewart conspired with Capriotti and Hargrove to misappropriate funds. *Id.* at 938. Stewart allegedly knew of the misappropriation because, as an owner of Intercounty stock, it received monthly financial and annual audited financial statements. It also alleged that Stewart had the contractual right to audit Intercounty and to sever its relationship with Intercounty at any time. Nevertheless, Independent alleged that when Stewart became aware of the Ponzi scheme, instead of auditing Intercounty or severing its relationship, Stewart waived Intercounty's contractual obligation to submit an annual audit and pressured Intercounty to find a source of funds to fill the escrow shortage. *Id.* at 939–40.

In concluding that Independent failed to allege a conspiracy, the Seventh Circuit explained that "the pressure Stewart exerted on Intercounty to fill the escrow gap, combined with

10

its failure to prevent the fraud by either demanding an audit or terminating its underwriting agreement" did not amount to a conspiracy because Independent "simply failed to allege *an agreement*." *Id.* at 940. "Stewart's failure to do more to prevent the fraud [does not make] it a co-conspirator . . . . To the contrary . . . in the absence of any evidence of an explicit or implicit agreement, a defendant's failure to prevent harm to a plaintiff does not amount to a conspiracy." *Id.* (citing *Tierney v. Vahle*, 304 F.3d 734, 739–40 (7th Cir. 2002)).

Likewise, Plaintiffs here have failed to make a single allegation suggesting that Defendants entered into an agreement of any kind related to the Chant or the allegations contained in Plaintiffs' FAC. To be sure, Plaintiffs' FAC does not allege that any Defendant ever communicated about the Chant. It merely assumes that, because the parties entered into the Management Contract and Events Contract, they must have discussed security and the propensity of fans of Team Mexico to engage in the Chant. As noted above, accidental, inadvertent or negligent participation in a scheme does not make it a conspiracy; there must be some coordination and an agreement among the co-conspirators, along with "specific facts warranting an inference" that Defendants were members of the conspiracy, for such a claim to survive a motion to dismiss. *Ashok Arora v. Diversified Consultants, Inc.*, No. 20-4113, 2021 WL 2399978, at *5 (N.D. Ill. June 11, 2021) (concluding that, although a plaintiff need not "plead with complete particularity all details of a conspiracy or the exact role of each defendant, the plaintiff must provide some form or scope to the conspiracy"). None exists here.

Moreover, suffering the same flaws as the complaint in *Independent Trust*, the FAC here fails to describe the alleged conspiracy's form or scope. For example, the FAC does not explain the alleged roles each Defendant agreed to serve in furtherance of the purported conspiracy, and, although Plaintiffs point to the Management Contract and Events Contract and

11

assert that the alleged conspiracy occurred during those negotiations, Plaintiffs fail to identify or name _any_ individual person involved in those negotiations with whom Defendants directly (or even indirectly) conspired to commit (or allow to occur) the purported misconduct. Like the plaintiffs in _Independent Trust_, Plaintiffs merely allege Defendants had knowledge of the historic use of the Chant and failed to take necessary steps to prevent it (or stop it) and thereby failed to prevent harm. However, "in the absence of any evidence of an explicit or implicit agreement, a defendant's failure to prevent harm to a plaintiff does not amount to a conspiracy." _Id._ at 940.

Simply put, Defendants' failure to do more to prevent the Chant at the 2019 Gold Cup Final simply does not constitute a civil conspiracy, regardless of Defendants' purported knowledge of the propensity of those fans to use the Chant. Thus, the factual allegations in the FAC do not and cannot plausibly allege a civil conspiracy. Count Two should be dismissed with prejudice against both Defendants.

**B.      Plaintiffs Fail To Allege An Overt Act In Furtherance Of The Conspiracy**

With artful language, Plaintiffs attempt to create an overt act out of nothing. Plaintiffs allege: "In furtherance of this agreement, Defendants refused to implement the Three-Step Match Protocol, to eject crowd members who were engaged in discrimination, [and] to respond to Plaintiffs' multiple requests for Defendants to take action beyond and throughout the match." [Compl. ¶ 183.] In so doing, Plaintiffs allege mere inaction, not an overt act in furtherance of the alleged conspiracy, which is insufficient to support their claim.

Courts have consistently held that the "overt act" element requires an affirmative act and that mere inaction is insufficient. _Gross ex rel. United States v. AIDS Rsch. All.-Chicago_, No. 01-c-8182, 2004 WL 905952, at *9 (N.D. Ill. Apr. 27, 2004); _Weber v. E.D.&F Man Int'l, Inc._, No. 97-c-7518, 1999 WL 35326, at *4 (N.D. Ill. Jan. 13, 1999); _Ritchie Cap. Mgmt., LLC v._

12

*Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 229–340 (S.D.N.Y. 2015) (collecting cases). For example, in *Weber*, the plaintiffs alleged that the defendants "deliberately ignored several 'red flags,'" that a trustee was engaging in fraud, and intentionally failed to investigate. *Weber*, 1999 WL 35326, at *1. The court dismissed the conspiracy claim, holding that "a failure to act cannot constitute an affirmative or overt act, regardless of the motivation." *Id.* at *4. Similarly, the plaintiffs in *Gross* alleged that the defendants had conducted a study and falsely certified compliance with various regulations. The plaintiff alleged that the defendants agreed to not "blow the whistle" on one another for their false certification, and therefore engaged in a civil conspiracy. As with *Weber*, the *Gross* court dismissed the claim, finding that the complaint merely alleged "inaction" which is not an "overt act." *Gross*, 2004 WL 905952, at *9.

Here, although Plaintiffs use the verb "refused" in an attempt to dress up inaction as an affirmative act, the reality is that Plaintiffs allege nothing more than inaction. Nowhere in Paragraph 183 of the FAC, or anywhere else, do Plaintiffs allege an affirmative overt act by SMG, the Park District, or any other alleged co-conspirator in furtherance of the alleged conspiracy, as is required to state a civil conspiracy claim under Illinois law. Therefore, Plaintiffs cannot make out a *prima facie* conspiracy claim and Count Two must be dismissed.

## III.   The Park District Is Immune Under The Illinois Tort Immunity Act

This Court should also dismiss Counts One and Two as asserted against the Park District (and by extension as noted *supra*, Soldier Field) because the Park District is protected by the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-101, *et seq.* (the "Act"). "A local public entity is not liable for an injury caused by . . . failing to enforce any law." *Id.* § 2-103. Likewise, "[a] public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 2-109.

13

The Act applies to claims brought under Illinois common law or statute, including the IHRA. *Mansfield v. Chi. Park Dist. Grp. Plan*, 946 F. Supp. 586, 593 (N.D. Ill. 1996); *C.f. Rozsavolgyi v. City of Aurora*, 58 N.E.3d 65, 99 (Ill. App. 2016), *vacated* 102 N.E.3d 162 (Ill. 2017). The Park District is a public entity protected by the Act. 745 ILCS 10/2-206.

Here, Count One seeks to hold the Park District liable for allegedly failing to "implement the Three-Step Match Protocol, to eject crowd members who were engaging in discrimination, to respond to Plaintiffs' multiple requests for Defendants to take action before and throughout the match, [and] to take any action in response to the [the] Chant." [Compl. ¶ 178.] Accordingly, Count One falls squarely within § 2-103 of the Act by alleging that the Park District failed to enforce the IHRA, and should thus be dismissed. *See Reyes v. Bd. of Educ. v. City of Chi.*, 139 N.E.3d 123, 137 (Ill. App. 2019) (granting immunity where plaintiff alleged that defendant failed to enforce Abused and Neglected Child Reporting Act); *Anthony v. City of Chi.*, 888 N.E.2d 721 (Ill. App. 2008) (granting immunity where city sought order to close a nightclub but then did not enforce it; § 2-103 applied because the complaint alleged the city did nothing at the time of the injury). The Park District is likewise protected by § 2-104, which provides immunity for injuries "caused by the . . . failure or refusal to issue, deny, suspend or revoke, any permit, license . . . or similar authorization," including the Management Contract Plaintiffs assert the Park District should have canceled. 745 ILCS 10/2-104.

Count Two, alleging Defendants conspired among themselves to violate the IHRA by not "taking reasonable and appropriate steps to prevent, address, or stop . . . discrimination" [Compl. ¶ 181] likewise falls within the ambit of § 2-103 of the Act for failing to prevent the injuries Plaintiffs sustained. Section 2-103 applies when a public entity is accused of passive non-enforcement, and even applies when the public entity "took action at some earlier

14

time, but failed to act at all when the injury occurred." *Reyes*, 139 N.E.3d at 137. Here, Plaintiffs allege the Park District conspired with SMG to not prevent the Chant at the Gold Cup Final, and that such conduct violated the IHRA. Turning such "allegations concerning the [Park District's] failure to act into a course of direct action is not persuasive," and warrants dismissal under § 2-103. *Anthony v. City of Chicago,* 888 N.E.2d 721, 730 (Ill. App. 2008).

## CONCLUSION

Defendants respectfully request that Count Two be dismissed with prejudice against all Defendants pursuant to Fed. R. Civ. P. 12(b)(6) because Count Two is preempted by the Illinois Human Rights Act and Plaintiffs have failed to state a *prima facie* case by failing to allege an agreement or an overt act in furtherance of such agreement. Additionally, Defendants respectfully request that Counts One and Two be dismissed with prejudice against the Park District because the Park District is protected by the Illinois Tort Immunity Act.

Date: February 10, 2022

Respectfully submitted,

/s/ *John R. FitzGerald*
Christopher Ward
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
cward@foley.com
312.832.4500
312.832.4700 (facsimile)

John R. FitzGerald
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
jfitzgerald@foley.com
414.297.5079
414.297.4900 (facsimile)

*Attorneys for Defendants SMG d/b/a ASM Global and the Chicago Park District*

15

## CERTIFICATE OF SERVICE

I, John R. FitzGerald, an attorney, hereby certify that on February 10, 2022, I caused the foregoing DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM to be filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

/s/ *John R. FitzGerald*
John R. FitzGerald

16