**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JORDAN PENLAND, KARL GERNER, EDWARD R. BURKE, and PAUL C. BURKE, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:21-cv-05581 |
| v. | ) ) | Hon. John Robert Blakey |
| CHICAGO PARK DISTRICT, SOLDIER FIELD, and ASM GLOBAL, | ) ) ) | Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

      A.    Clear Signs that the Discriminatory Chant Would Occur at the 2019 Gold Cup Match and Defendants' Agreements Related to the 2019 Gold Cup Match ......................................................................................................... 2

      B.    The Discriminatory Chant Occurs at the 2019 Gold Cup Final and the Actions Taken by Defendants ................................................................... 3

      C.    Plaintiffs' First Amended Complaint and Exhaustion of Claims Before the Illinois Human Rights Commission ....................................................... 4

LEGAL STANDARD .................................................................................................... 4

ARGUMENT .............................................................................................................. 5

I.      Chicago Park District Is Not Immune Under the Illinois Tort Immunity Act ................... 5

II.     Plaintiffs Have Pleaded a Prima Facie Civil Conspiracy Claim .......................... 8

      A.    Plaintiffs Have Pled an Agreement Between Defendants ..................................... 8

      B.    Plaintiffs Have Pled an Overt Act By Defendants ................................................. 11

III.    Plaintiffs' Civil Conspiracy Is Not Preempted Because the Civil Conspiracy Can Be Proven Independent of the Duties Established in the IHRA ....................... 13

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adcock v. Brakegate, Ltd.*,
   164 Ill. 2d 54 (1994) ................................................................8, 9, 10, 13

*Alarm Detection Sys., Inc. v. Vill. of Schaumburg*,
   2021 WL 1172240 (N.D. Ill. Mar. 29, 2021)...........................................5

*Barnett v. Zion Park Dist.*,
   171 Ill. 2d 378 (1996) ...........................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................4

*Buckner v. O'Brien*,
   287 Ill. App. 3d 173, 222 Ill. Dec. 564, 677 N.E.2d 1363 (1997) .........11

*Carroll v. City of Oak Forest*,
   2020 WL 2526483 (N.D. Ill. May 18, 2020) ............................................7

*Chaidez v. Ford Motor Co.*,
   937 F.3d 998 (7th Cir. 2019) ..................................................................15

*Chiappetta v. Kellogg Sales Co.*,
   2022 U.S. Dist. LEXIS 35632 (N.D. Ill. Mar. 1, 2022)............................5

*Collins v. Bd. of Educ. of N. Chi. Cmty. Unit Sch. Dist. 187*,
   792 F. Supp. 2d 992 (N.D. Ill 2011) .........................................................5

*Doe I v. Bd. of Educ. of City of Chi.*,
   364 F. Supp. 3d 849 (N.D. Ill. 2019) ........................................................7

*Geinosky v. City of Chicago*,
   675 F.3d 743 (7th Cir. 2012) ....................................................................8

*Harris v. City of Chi.*,
   479 F. Supp. 3d 743 (N.D. Ill. 2020) ........................................................7

*Herra v. Di Meo Bros., Inc.*,
   529 F. Supp. 3d 819 (N.D. Ill. 2021) ......................................................15

*Hoskins v. Poelstra*,
   320 F.3d 761 (7th Cir. 2003) ....................................................................1

*Hyson USA, Inc. v Hyson 2U, Ltd.,*
821 F.3d 935 (7th Cir. 2016) .................................................................................7

*Independent Trust Corp. v. Stewart Information Services Corp.,*
665 F.3d 930 (7th Cir. 2012) ...............................................................................10

*Jimenez v. Thompson Steel Co.,*
264 F. Supp. 2d 693 (N.D. Ill. 2003) ...................................................................14

*Khan v. Bd. of Educ. of Chi.,*
2018 WL 6192186 (N.D. Ill. Nov. 28, 2018) .........................................................7

*Maglaya v. Kumiga,*
2015 U.S. Dist. LEXIS 101217 (N.D. Ill. Aug. 3, 2015).............................8, 10, 11

*Mansfield v. Chi. Park Dist. Grp. Plan,*
946 F. Supp. 586 (N.D. Ill. 1996) ..........................................................................6

*PACE, Suburban Bus Div. of Regional Transp. Authority v. Regional Transp.
Authority,*
346 Ill. App. 3d 125, 803 N.E.2d 13 (App. Ill. Ct. 2003) .......................................5

*Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.,*
121 F. Supp. 3d 321 (S.D.N.Y. 2015).................................................................12

*Romano v. Vill. of Glenview,*
277 Ill. App. 3d 406, 660 N.E.2d 56 (Ill. App. Ct. 1995).....................................5, 7

*Rozsavolgyi v City of Aurora,*
58 N.E.3d 65 (Ill. App. 2017) ...............................................................................6

*United States ex rel. Sibley v. Univ. of Chi.,*
2021 U.S. Dist. LEXIS 143781 (N.D. Ill. Aug. 2, 2021).........................................4

*Skrzypkowski v. Simmons,*
2013 IL App (1st) 122340-U ...............................................................................11

*Summerland v. Exelon Generation Co.,*
510 F. Supp. 3d 619 (N.D. Ill. 2020) ...................................................................14

*Gross ex rel. United States v. AIDS Rsch. All.-Chicago,*
2004 WL 905952 (N.D. Ill. Apr. 27, 2004) ...........................................................12

*Weber v. E.D.&F. Man Int'l, Inc.,*
1999 WL 35326 (N.D. Ill. Jan. 13, 1999) .............................................................12

**Statutes**

745 ILCS 10/2-101 .................................................................................................6

775 ILCS 5/1-102 (A)................................................................................................13

775 ILCS 5/5-102 ..................................................................................................12

775 ILCS 5/5-102(A)..............................................................................................14

## INTRODUCTION

Defendant Chicago Park District (CPD) asserts an affirmative defense based on the Tort Immunity Act, which is designed to only provide protection from tort claims that primarily seek money damages. This simply does not apply to Plaintiffs' statutory cause of action under the Illinois Human Rights Act. Defendant CPD fairs no better asserting this affirmative defense against the tort claim since the facts are not sufficiently developed to determine if this claim will primarily seek money damages or equitable relief—a necessary determination that Defendant CPD must prove to assert this affirmative defense.

Defendants also seek to dismiss the civil conspiracy claim based on sweeping conclusory statements that Plaintiffs never pleaded an agreement or overt act in furtherance of the conspiracy. But this is wrong on the law and the facts. The law does not require a civil conspiracy to be pleaded with particularity, just "merely [] indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003). And the factual allegations in the pleadings, as discussed extensively below, show that Plaintiffs easily step over this low bar.

Defendants finally argue that the IHRA preempts the civil conspiracy claim because the elements required to prove this claim are not independent of those prescribed in the IHRA. But Defendants rely solely on employment discrimination cases for this proposition even though the common law duties owed from an employer to an employee differ compared to those owed from an operator of a public accommodation to a patron.

For these reasons, the Court should deny Defendants' motion.

## BACKGROUND

A.    **Clear Signs That the Discriminatory Chant Would Occur at the 2019 Gold Cup Match and Defendants' Agreements Related to the 2019 Gold Cup Match**

With increasing frequency and intensity over the last decade, fans of Mexico's national soccer team have loudly chanted "¡eeeh puto!," a homophobic slur and derogatory term for a male sex worker ("Discriminatory Chant"), every time Mexico's opponent takes a goal kick. (Compl. ¶ 26.) This chant has been the subject of national and international news, as soccer fans and journalists alike have criticized Mexican soccer fans for their refusal to end this discriminatory practice. (Compl. ¶ 24.) This discrimination occurred on television broadcasts and videos as early as the 2011 Gold Cup tournament and continued during the 2013, 2015, and 2017 Gold Cup tournaments, which were held at venues across the United States. (Compl. ¶ 26.) This led to broadcast companies like ESPN and Univision to warn viewers on-air about the Discriminatory Chant. (Compl. ¶ Intro. at 3.) The Discriminatory Chant also led the Confederation of North, Central America and Caribbean Association Football (CONCACAF) to develop a Three-Step Match Protocol, a method of combatting racist and discriminatory events by stopping the match and issuing warnings to fans via the "PA" system and message boards. (Compl. ¶ 42.)

In the years leading to the 2019 Gold Cup Final, FIFA, the worldwide regulatory body for soccer, repeatedly fined and sanctioned Federación Mexicana de Fútbol Asociación (the Mexican Football Federation) for fans' use of the Discriminatory Chant. (Compl. ¶ 25.)  In fact, FIFA has repeatedly fined the Mexican Football Federation for this chant. (Compl. ¶ Intro. at 3.)

Against this 10-year backdrop, Defendants executed at least two contracts to allow the 2019 Gold Cup Final to be hosted at Soldier Field. (Compl. ¶ 29.) The Management Contract gave ASM Global the authority to enter into contracts regarding events at Soldier Field. (Compl. ¶ 30.) It requires Defendants to provide security and manage event attendees, as well as commits ASM

2

Global to anti-discrimination practices and compliance with local, state, and federal laws like the Illinois Human Rights Act ("IHRA" or "Act"). Second, one or both Defendants entered into an Event Contract with CONCACAF that allowed Soldier Field to host the Gold Cup Final. (Compl. ¶ 37.) This contract had provisions on security and crowd management responsibilities, compliance with local, state, and federal laws, and apparently, CONCACAF having control of the public announcement ("PA") system and overhead video displays during the Gold Cup Final. (Compl. ¶ 41.)

In the days before the 2019 Gold Cup Final, the Discriminatory Chant, including all five of Mexico's matches leading to the Gold Cup Final. (*Id.*) Importantly, Plaintiffs also directly notified Defendants of the risk that this chant would occur. On July 3, 2019, four days ahead of the match, Paul Burke sent an electronic message to Soldier Field's Assistant General Manager and the Chicago Park District General Counsel regarding the impending Discriminatory Chant and the risk that this posed LGBTQ+ patrons like himself and others. (Compl. ¶¶ 48-49.) Mr. Burke did not receive a response to either message. (Compl. ¶ 52.)

**B.** **The Discriminatory Chant Occurs at the 2019 Gold Cup Final and the Actions Taken by Defendants**

Plaintiffs attended the 2019 Gold Cup Final in official U.S. National Team replica uniforms that celebrated Pride Month. These uniforms allowed other attendees and stadium officials to identify and associate each Plaintiff with the LGBTQ+ community. (Compl. ¶ 60.) This allowed some fans to direct the Discriminatory Chant toward Plaintiffs. (Compl. ¶ 62.)

The Discriminatory Chant started as soon as the Gold Cup Final began and occurred 17 times in the first half of the match (Compl. ¶¶ 71-116.) When Plaintiffs reported the misconduct by text message to the security number published in Soldier Field's online facility guide, they received two "middle finger" emojis in response. (Compl. ¶¶ 69-70.) When Plaintiffs complained

about the Discriminatory Chant to stadium officials/security at halftime, nothing happened. (Compl. ¶ 119.) The Discriminatory Chant continued—11 more times. (Compl. ¶¶ 126-159.) This meant the Discriminatory Chant occurred at least 28 times in total. (*Id.*)

### C. Plaintiffs' First Amended Complaint and Exhaustion of Claims Before the Illinois Human Rights Commission

Based on the occurrences at the match, Plaintiffs filed a discrimination charge with the Illinois Department of Human Rights ("IDHR"). Based on this charge, the IDHR investigated the Defendants' actions preceding the 2019 Gold Cup Final and found substantial evidence that the Chicago Park District, Soldier Field, and ASM Global violated the IHRA. (Compl. ¶ Intro. at 3.)

Plaintiffs subsequently commenced this action. Plaintiffs assert two causes of action in their First Amended Complaint. In Count One, Plaintiffs allege that Defendants violated the IHRA by engaging in impermissible public accommodations discrimination based on Plaintiffs' sexual orientation. (Compl. ¶¶ 175-179.) Count Two is a civil conspiracy claim, alleging that Defendants unlawfully agreed among themselves and CONCACAF to host the 2019 Gold Cup Final without taking reasonable and appropriate steps to prevent, address, or stop foreseeable sexual orientation discrimination, as required under the IHRA. (Compl. ¶¶ 180-184.)

## LEGAL STANDARD

A court must deny a defendant's motion to dismiss unless a plaintiff's complaint fails to plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, (2007). A plaintiff meets this "plausibility" standard by "'plead[ing] factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged.'" *United States ex rel. Sibley v. Univ. of Chi.*, No. 17 C 4457, 2021 U.S. Dist. LEXIS 143781, at *14 (N.D. Ill. Aug. 2, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009)). "When considering such motions, courts 'construe the complaint in the light most

favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.'" *Chiappetta v. Kellogg Sales Co.*, No. 21-CV-3545, 2022 U.S. Dist. LEXIS 35632, at *4 (N.D. Ill. Mar. 1, 2022) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## ARGUMENT

### I.  Chicago Park District Is Not Immune Under the Illinois Tort Immunity Act

Defendant CPD argues it is immune under the Illinois Tort Immunity Act. Not so. The Tort Immunity Act does not apply here for these three reasons: (1) the Tort Immunity Act does not apply to statutory causes of action; (2) the Tort Immunity Act does not apply to torts actions that primarily seek equitable relief; (3) the Tort Immunity Act provides affirmative defenses that require Defendant CPD to prove it is entitled to such relief and it is premature to grant this affirmative defense without developing the facts of this case.

*First*, Defendant CPD incorrectly argues that the Tort Immunity Act extends to statutory causes of action. It does not. The Tort Immunity Act ***only*** applies when the underlying action is a tort action and the relief sought is monetary damages. *PACE, Suburban Bus Div. of Regional Transp. Authority v. Regional Transp. Authority*, 346 Ill. App. 3d 125, 143, 803 N.E.2d 13, 29 (App. Ill. Ct. 2003) ("It is well settled that the Tort Immunity Act applies only to tort actions seeking damages and not to actions seeking injunctive relief."); *see also Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 2021 WL 1172240, at *9 (N.D. Ill. Mar. 29, 2021) ("Significantly, the Act provides for immunity only against claims for damages."); *Collins v. Bd. of Educ. of N. Chi. Cmty. Unit Sch. Dist. 187*, 792 F. Supp. 2d 992, 999 (N.D. Ill 2011) ("The Tort Immunity Act applies only to tort actions . . . ."); *Romano v. Vill. of Glenview*, 277 Ill. App. 3d 406, 411, 660 N.E.2d 56, 60 (Ill. App. Ct. 1995) (finding that Defendants were not immune under the Tort Immunity Act because "injunctive relief does not constitute damages under the Act.").

The plain language of the Tort Immunity Act explicitly states that it does not apply to actions seeking relief other than monetary damages: "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee." 745 ILCS 10/2-101.

Defendant CPD tries to overcome this hurdle by relying on two cases that purportedly justify expanding the Tort Immunity Act to statutory-based causes of action. (Mot. at 13-14 (citing *Mansfield v. Chi. Park Dist. Grp. Plan*, 946 F. Supp. 586 (N.D. Ill. 1996) and *Rozsavolgyi v City of Aurora*, 58 N.E.3d 65 (Ill. App. 2017)).) Neither justifies this expansion. *Mansfield* directly contradicts Defendant's argument about expansion, holding that the "application of the Tort Immunity Act is ***limited to tort actions***." 946 F. Supp. at 593 (emphasis added). In *Rozsavolgyi*, the court's decision was vacated for the precise reason that Defendant CPD seeks to use it: the certified question as to the Tort Immunity Act should not have been answered because it was "overbroad" and "improper." 102 N.E.3d 162, 174 (Ill. 2017).

Defendant CPD also attempts to muddy the water by relying on two cases where a court granted immunity under the Tort Immunity Act when a plaintiff alleged a failure to enforce a statute. (Mot. at 14 (citing *Reyes v. Bd. of Educ. of City of Chi.*, 139 N.E.3d 123 (Ill App. Ct. 2019) and *Anthony v. Bd. of Educ. of City of Chi.*, 888 N.E.2d 721 (Ill. App. Ct. 2008)).) Neither case had a statutory cause of action. Indeed, both cases involved ***tort*** actions that relied on a statutory provision to justify an element of the underlying tort. This is not the cause of action Count One at issue here. Plaintiffs' first cause of action seeks to hold Defendant CPD liable for a "[v]iolation of the Illinois Human Rights Act"—***not a tort***. (Dkt. 29 at 37.)

Simply put, the Tort Immunity Act provides immunity for torts. This is fatal to Defendant CPD's argument about being immune to statutory violation of the IHRA (Count One).

6

*Second*, the Tort Immunity Act also does not grant immunity for a tort claim that primarily seeks equitable relief. To be clear, a plaintiff can seek ***some*** monetary relief from a tort claim without invoking the Tort Immunity Act. *Romano*, 277 Ill. App. 3d at 411 (holding that Tort Immunity Act did not apply to action seeking injunctive relief even though Defendant CPD would also expend money to provide requested relief). Again, this makes sense because a plaintiff primarily seeking equitable relief through a tort to enforce a statutory duty is not abusing a common law tort to try and avoid/enhance damages potentially prohibited under the statute. So too here, Plaintiffs in Count Two are seeking to hold Defendant CPD liable for a failure to enforce a statutory provision through a tort—***and most likely (depending on how the case develops) primarily seek equitable relief.***

*Third and relatedly*, it is premature to decide a motion to dismiss on an affirmative defense under the Tort Immunity Act without the facts being developed related to the second cause of action. Indeed, the Tort Immunity Act "provides affirmative defenses, and plaintiffs generally need not anticipate and overcome affirmative defenses in their complaint." *Doe I v. Bd. of Educ. of City of Chi.*, 364 F. Supp. 3d 849, 862-63 (N.D. Ill. 2019) (internal citations omitted). Because it provides affirmative defenses, Defendant CPD bears the burden of pleading and proving it is entitled to immunity under the Tort Immunity Act. *Id*. Dismissal based on an affirmative defense "is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (emphasis in original). Due to this requirement, courts routinely deny motions to dismiss based on affirmative defenses. *See, e.g.*, *Harris v. City of Chi.*, 479 F. Supp. 3d 743, 753 (N.D. Ill. 2020); *Carroll v. City of Oak Forest*, 2020 WL 2526483, at *6 (N.D. Ill. May 18, 2020); *Khan v. Bd. of Educ. of Chi.*, 2018 WL 6192186, at *7 (N.D. Ill. Nov. 28, 2018). Specifically, Defendant CPD

has not established—because the record has not been developed—that Plaintiffs are primarily seeking monetary damages for their civil conspiracy tort claim. Defendant CPD prematurely invokes this defense.

## II.    Plaintiffs Have Pleaded a Prima Facie Civil Conspiracy Claim

Defendants argue that Plaintiffs have failed to plead two elements of a civil conspiracy: (1) agreement and (2) overt act. Defendants fail to recognize the lower burden to plead civil conspiracy claims, because much of the evidence resides in Defendants' possession.

When pleading conspiracy, "a plaintiff is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66 (1994). To sufficiently plead conspiracy, plaintiffs need only "detail the participants in the conspiracy, their unlawful intentions, the temporal origins of the conspiratorial scheme, and the resulting harm." *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 U.S. Dist. LEXIS 101217, at *48-49 (N.D. Ill. Aug. 3, 2015). These facts are "sufficient to state a claim for conspiracy under the Illinois common-law standard and to put [Defendant] on notice of the charges against him in accordance with the notice-pleading standard of the Federal Rules of Civil Procedure." *Id.*

Plaintiffs exceeded this low bar when pleading an agreement and overt act. Each element is discussed below.

### A.    Plaintiffs Have Pled an Agreement Between Defendants

To sufficiently plead a conspiracy claim, a plaintiff simply must allege a "plausible account of a conspiracy." *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). To do this, it is sufficient for a plaintiff to "detail the participants in the conspiracy, their unlawful intentions, the temporal origins of the conspiratorial scheme, and the resulting harm." *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 U.S. Dist. LEXIS 101217, at *48-49 (N.D. Ill. Aug. 3, 2015). Because a

8

conspiracy is "rarely susceptible of direct proof" and is often "established from circumstantial evidence and inferences drawn from evidence," a plaintiff "cannot be required to plead with specificity the very facts that can only be proven by circumstantial evidence." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66 (1994). Further, a plaintiff "is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff." *Id.*

Plaintiffs sufficiently allege facts to support a plausible conspiracy claim. The Amended Complaint explicitly alleges an agreement among Defendants "to host the 2019 Gold Cup Final without taking reasonable and appropriate steps to prevent or stop predictable and foreseeable sexual orientation discrimination, as required under state law." Am. Compl. ¶ 169; s*ee also id.* ¶¶ 180-184. The participants in the conspiracy are clearly identified, as are their unlawful intentions, the temporal scope of the conspiracy, and the resulting harm. *Id*. ¶¶ 35-36, 45-46.

Defendants argue that it is a "presumptuous conclusion" that they possessed prior knowledge of the use of the Discriminatory Chant and that it was "predictable and foreseeable" that it would occur during the match. Brief ISO MTD at 8. Yet, the Amended Complaint contains many facts showing that it is not "presumptuous," including facts that Plaintiffs contacted Defendants before the match and during the match to warn them about the discriminatory behavior and their statutory duty to prevent it. Further, in an Illinois Department of Human Rights proceeding, Defendants admitted that Mexico soccer fans screaming the Discriminatory Chant was "common knowledge." Am. Compl. at 3. This prior knowledge makes it entirely plausible that Defendants entered into an agreement to host the 2019 Gold Cup Final knowing about the likely use of the Chant but refused to take any steps to curtail the predictable sexual orientation discrimination.

Defendants falsely contend that the Amended Complaint does not include "a single allegation suggesting that Defendants entered into an agreement of any kind related to the [Discriminatory] Chant." Brief ISO MTD at 11. Contrary to that position, the Amended Complaint contains numerous allegations regarding the agreement, with enough specificity to sufficiently support a plausible conspiracy. Am. Compl. ¶¶ 35-36, 45-46. Defendants rely heavily on *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930 (7th Cir. 2012), to support their argument that an agreement must be alleged to support a conspiracy claim; however, that case is clearly distinguishable. In that case, the court dismissed the conspiracy claim because the plaintiff failed to allege any agreement. That is not the case here. The Amended Complaint alleges facts sufficient to support the conspiracy claim. The Amended Complaint clearly alleges the participants, the unlawful intentions, the temporal origins, and the resulting harm. *See Maglaya v. Kumiga*, No. 14-cv-3619, 2015 U.S. Dist. LEXIS 101217, at *48-49 (N.D. Ill. Aug. 3, 2015).

Defendants further argue that the Amended Complaint does not include certain facts, such as "the alleged roles each Defendant agreed to serve in furtherance of the purported conspiracy" and the identity of individuals "with whom Defendants directly (or even indirectly) conspired to commit (or allow to occur) the purported misconduct." Brief ISO MTD at 11-12. Again, Defendants conflate what is needed to sufficiently allege a conspiracy. To properly allege a conspiracy, a plaintiff "is not required to allege facts with precision where the necessary information to do so is within the knowledge and control of the defendant and unknown to the plaintiff." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 66 (1994). The very nature of a conspiracy means that the underlying facts and details are unknown to a plaintiff. Here, Plaintiffs are not required to provide the level of detail that Defendants argue is necessary. Instead, all that is required is allegations detailing "the participants in the conspiracy, their unlawful intentions, the

temporal origins of the conspiratorial scheme, and the resulting harm." *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 U.S. Dist. LEXIS 101217, at *48-49 (N.D. Ill. Aug. 3, 2015). The Amended Complaint contains numerous allegations regarding the agreement, with enough specificity to sufficiently support a plausible conspiracy claim.

### B. Plaintiffs Have Pled an Overt Act by Defendants

An overt act "is the act performed in pursuit of the agreement that may create liability. There is no cause of action unless an overt, tortious, or unlawful act is done that, in absence of the conspiracy, would give rise to a claim for relief." *Skrzypkowski v. Simmons*, 2013 IL App (1st) 122340-U, ¶ 23 (citations omitted). Because an overt act may be tortious *or* unlawful, Illinois law supports a civil action for conspiracy to commit a statutory violation. *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 U.S. Dist. LEXIS 101217, at *47 (N.D. Ill. Aug. 3, 2015). Such unlawful action is sufficiently violative when it "constitutes a breach of duty" and it is concerted when substantially assisted by co-conspirators. *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 180, 222 Ill. Dec. 564, 569, 677 N.E.2d 1363, 1368 (1997).

Here, Defendants acted in furtherance of the conspiracy through several unlawful and concerted actions: (1) allowing a third-party (CONCACAF or its agents) complete control over the stadium, including stadium video and audio systems like the digital scoreboard and public address microphone and speakers that would be necessary to implement the Three-Step Protocol, (2) refusing to implement the Three-Step Match Protocol to prevent or stop any of the 28 instances of the Discriminatory Chant, (3) refusing to eject crowd members who were engaged in the Discriminatory Chant, and (4) denying Plaintiffs full enjoyment of the event after multiple requests for the same. [Compl. ¶ 183.] These acts directly caused and contributed to the repeated injury suffered by Plaintiffs throughout the match. As a result, Plaintiffs' only options were to leave the

stadium, losing access to the event entirely, or to suffer through the event amidst thunderous and repeated discrimination.

Defendants characterize these repeated instances of sexual orientation discrimination as mere inaction, arguing that they cannot constitute overt acts under Illinois law. However, each case Defendants cite to support this proposition is clearly distinguishable since none of the referenced Defendants refused a statutory duty to act. In *Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp.*, the plaintiffs alleged that the defendants acted in furtherance of the conspiracy by failing to report fraud, failing to exercise contractual rights, failing to remove a satisfied financing agreement from its records, and several other similar acts. 121 F. Supp. 3d 321, 340 (S.D.N.Y. 2015). The court found that the alleged overt acts were merely inaction because they were examples only of the defendants' "failure" to act. *Id.* Similarly, "deliberately ignor[ing] 'red flags'" was insufficient for the court in *Weber v. E.D.&F. Man Int'l, Inc.*, No. 97-c-7518, 1999 WL 35326, at *4 (N.D. Ill. Jan. 13, 1999), and not "blow[ing] the whistle" on compliance failures was insufficient for the court in *Gross ex rel. United States v. AIDS Rsch. All.-Chicago*, No. 01-c-8182, 2004 WL 905952, at *9 (N.D. Ill. Apr. 27, 2004). The referenced defendants were not obligated by contract or by law to report fraud or exercise their own rights or act on red flags or blow the whistle. Failure to do so was thus not tortious or unlawful. In contrast, Plaintiffs' allegations here highlight repeated unlawful overt acts that expressly violate statutory requirements.

Defendants characterize the allegation that Defendants *refused* to enforce the IHRA as "artful language" meant to dress up inaction as an overt act. [Defs. M.T.D. at 12.] In doing so, Defendants miss the fact that "deny or refuse" is the Act's *active* language. Section 5-102 (A) instructs that it is a civil rights violation to "*deny or refuse* to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102

12

[emphasis added.] This provision thus required Defendants to take measures to respond to the continual and pervasive sexual orientation discrimination in the stadium. Refusal to do so violated the IHRA's requirements. Such a command aligns with the stated public policy goals outlined in the IHRA. Section 5/1-102 states that it is the public policy of Illinois:

> To secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations.

> 775 ILCS 5/1-102 (A).

This policy conflicts with Defendants' understanding of Illinois law. The reality that allows event managers to agree to do nothing while thousands of people chant homophobic slurs unabated and undeterred for hours is not one permitted by the Act. More sensibly, the IHRA imposes an affirmative duty on operators of public accommodations to secure full and equal enjoyment to members of protected classes. Thus, in violating this express requirement of the IHRA, Defendants furthered their conspiratorial goals and committed overt acts that were clearly "tortious or unlawful in character." *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63, 206 Ill. Dec. 636, 642, 645 N.E.2d 888, 894 (1994).

## III.    Plaintiffs' Civil Conspiracy Is Not Preempted Because the Civil Conspiracy Can Be Proven Independent of the Duties Established in the IHRA

Defendants allege that the civil conspiracy claim is preempted by the IHRA, because "elements of [Plaintiffs' civil conspiracy] claim [cannot be established] independent of the legal duties furnished by the IHRA." (Mot. at 6.)  In support of this proposition, Defendants rely on cases solely addressing preemption in the context of employment discrimination claims, not public

13

accommodations cases. (*Id.* at 6–7.) But the duties of employers differ from the duties of a property owner to keep patrons healthy and safe.

Simply put, Defendants owed Plaintiffs a common law of duty of reasonable care—to provide a safe environment for LGBTQ+ soccer fans to enjoy the Gold Cup on their property. In fact, Illinois courts have in analogous scenarios found that public or private tortfeasors owe a duty of reasonable care to patrons. *Barnett v. Zion Park Dist.*, 171 Ill. 2d 378, 387 (1996) (holding that public and private entities owe a duty of reasonable care). And Defendants cannot reasonably argue that the IHRA completely preempted the common law duty of reasonable care to keep patrons healthy and safe, as the IHRA address LGBTQ+ patrons having "full and equal enjoyment" of a public accommodation (775 ILCS 5/5-102(A)), not a reasonable level of health and safety at that public accommodation.

The IHRA merely codifies and re-affirms this understanding that a duty of reasonable care is owed at a place of public accommodation. And Defendants' own cases recognize that the IHRA does not preempt tort claims that do not rely on duties established in the IHRA. (Mot. at 6.) Here, Plaintiffs' civil conspiracy claim arises from facts establishing an IHRA violation, but the underlying elements can be proven without using any duty created by the IHRA. *Jimenez v. Thompson Steel Co.*, 264 F. Supp. 2d 693, 697 (N.D. Ill. 2003) (holding that the facts related to the statutorily prohibited discrimination can be used satisfactorily to plead the elements of a common-law tort).[1] That is why Defendants' claim for preemption fails; Defendants have acted

---

[1] Even if this Court determined that no other independent duty existed apart from the IHRA (it should not), the Seventh Circuit has recognized "statutory torts." *Summerland v. Exelon Generation Co.*, 510 F. Supp. 3d 619, 631 (N.D. Ill. 2020) ("[T]he Seventh Circuit has observed that federal employment discrimination laws create "statutory torts."). So too here, this Court should recognize that the IDHA created a "statutory tort" regarding duties of operators of public accommodations that can serve as the tort underlying a civil conspiracy claim.

unlawfully, by conspiring to not provide a duty of reasonable care at a place of public accommodation.

Plaintiffs also argue that even if Plaintiffs brought the civil conspiracy based on a statutory violation, not a common-law tort as alleged, it would fail because this statutory claim was not administratively exhausted. This is incorrect. Illinois courts have recognized that "claims not asserted in an administrative charge are considered exhausted if they are like or reasonably related to the charge and growing out of the charge." *Herra v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 827 (N.D. Ill. 2021) (citing *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004-1005 (7th Cir. 2019)). Claims specifically are "reasonably related" when they "describe the same conduct and implicates the same individuals." *Chaidez*, 937 F.3d at 1004-1005. Here, the defendants are identical to the administrative claim. And this civil conspiracy claim grew out of administrative claim: the initial charge in front of the Illinois Human Rights Commission was based on defendants not providing "full and equal enjoyment" of a public accommodations by allowing the repeated use of the Discriminatory Chant which has led to a civil conspiracy charge based on defendants not providing a reasonable duty of care in a place of public accommodation by allowing the repeated use of the Discriminatory Chant inherently grows out of. That is why Plaintiffs claim of an additional civil conspiracy statutory violation under the IHRA would be considered exhausted.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.

Dated: March 10, 2022                         Respectfully submitted,

                                              /s/ Julie A. Bauer
                                              Julie A. Bauer
                                              John E. Drosick
                                              Thomas J. Neuner

Tyree Petty-Williams
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
JBauer@winston.com
JDrosick@winston.com
TNeuner@winston.com
TPettyWilliams@winston.com

## <u>CERTIFICATE OF SERVICE</u>

Julie A. Bauer, attorney for Plaintiffs, certifies that on this 10th day of March, I caused the attached copy of **Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim** to be served on the following persons by ECF:

Christopher Ward
John Litchfield
**Foley & Lardner LLP**
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
cward@foley.com
jlitchfield@foley.com
(312) 832-4500

Jack FitzGerald
**Foley & Lardner LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
jfitzgerald@foley.com
(414) 271-2400

*Attorneys for Defendants SMG d/b/a ASM Global
and the Chicago Park District*

/s/ Julie A. Bauer
Attorney for Plaintiffs