UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORDAN PENLAND, KARL GERNER, EDWARD R. BURKE, AND PAUL C. BURKE, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Judge John Robert Blakey<br>) |
| vs. | ) Case No. 1:21-cv-05581<br>) |
| CHICAGO PARK DISTRICT, SOLDIER FIELD, and ASM GLOBAL, | )<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**INTRODUCTION**

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. 43] ("Plaintiffs' Brief" or "Pl. Br.") fails to overcome (1) Plaintiffs' failure to establish a *prima facie* claim for civil conspiracy, (2) preemption under the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* ("IHRA"), and (3) immunity under the Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, *et seq.* ("Tort Immunity Act").[1]

Plaintiffs' First Amended Complaint ("FAC") fails to allege a *prima facie* case for civil conspiracy. Specifically, the FAC fails to sufficiently allege (1) an agreement, and (2) an

---

[1] In this brief, "Plaintiffs" shall mean Jordan Penland, Karl Gerner, Edward Burke, and Paul Burke. "SMG" shall mean SMG d/b/a ASM Global (erroneously named and served as "ASM Global"). The "Park District" shall mean Chicago Park District (simultaneously and erroneously named and served as "Soldier Field"). "Defendants" shall mean SMG and the Park District, collectively. And "the Chant" shall mean the alleged homophobic slur chanted by fans of Mexico's national soccer team at the 2019 Gold Cup Final.

4881-4170-8822.1

overt act in furtherance of the alleged conspiracy. Plaintiffs' arguments to the contrary are unpersuasive.

Regarding the overt act, Plaintiffs contend – without any legal or logical support – that they do not need to allege an affirmative overt act, because they instead allege that Defendants had an affirmative duty to act and failed to satisfy such purported affirmative duty. But this argument grasps at straws. Civil conspiracy plaintiffs must allege an <u>overt action</u> – which must be an affirmative action, <u>not inaction</u> – as part of the *prima facie* case. *E.g.*, *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004); *Gross ex rel. United States v. AIDS Rsch. All.-Chicago*, No. 01-c-8182, 2004 WL 905952, at *9 (N.D. Ill. Apr. 27, 2004). The FAC fails to satisfy that obligation. Regarding the agreement, Plaintiffs rely on a single misleading clause in a single opinion in an effort to dilute the pleading standard for civil conspiracy claims. Contrary to Plaintiffs' assertions, the FAC needed to allege an agreement and it needed to plead sufficient facts to provide some form or scope to the agreement. *E.g.*, *Arora v. Diversified Consultants, Inc.*, No. 20-4113, 2021 WL 2399978, at *5 (N.D. Ill. June 11, 2021). The FAC meets neither of these requirements.

Plaintiffs' Brief also fails to overcome Defendants' argument that the civil conspiracy claim is preempted by the IHRA. Defendants' argument is straightforward: A civil conspiracy claim is preempted by the IHRA where a plaintiff cannot "prove the elements of [their claim] independent of the legal duties furnished by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). Here, Plaintiffs explicitly pleaded a civil conspiracy *to violate the IHRA*, and, as such, it is plain on the face of the FAC that Plaintiffs cannot prove the elements of their claim independent of the IHRA. In response, Plaintiffs confusingly point to the duty of care owed by landowners to invitees, essentially asserting that Defendants breached their

2

4881-4170-8822.1

duty to invitees, and therefore Plaintiffs can prove a civil conspiracy *to violate the IHRA*, independent of *the IHRA*. That argument is nonsensical and should be rejected.

Finally, Plaintiffs' Brief fails to overcome the argument that the Park District is immune to Plaintiffs' claims under the Tort Immunity Act. Plaintiffs incorrectly state that the Tort Immunity Act only applies when a plaintiff seeks primarily monetary damages. In reality, the Tort Immunity Act applies to all claims involving monetary damages; when a court is confronted with a claim covered by the Tort Immunity Act for both monetary and non-monetary relief, a court should dismiss the claim *to the extent* it seeks monetary relief. *See, e.g.*, *Gibson v. Aden*, No. 16-cv-1310, 2017 WL 1908445, at *2–3 (S.D. Ill. May 10, 2017) (dismissing a claim "to the extent it seeks money damages," where plaintiffs argued for dismissal under the Tort Immunity Act, among other things). Furthermore, Plaintiffs argue that the Tort Immunity Act categorically excludes non-tort actions. In fact, the issue is far less clear than Plaintiffs suggest, and Plaintiffs' argument directly conflicts with the text of the statute. *See Rozsavolgyi v. City of Aurora*, 58 N.E.3d 65, 97–99 (Ill. App. Ct. 2016) (analyzing the split authority on this issue), *vacated* 102 N.E.3d 162 (Ill. 2017).

For these reasons and the reasons stated in Defendants' Brief in Support of its Motion to Dismiss ("Defendants' Brief"), Defendants respectfully request the Court dismiss Plaintiffs' civil conspiracy claim, which is the Second Cause of Action in the FAC ("Count Two"), against both SMG and the Park District, and dismiss Plaintiffs' statutory IHRA claim, which is the First Cause of Action in the FAC ("Count One"), against the Park District.

4881-4170-8822.1

**ARGUMENT**

I. **Plaintiffs Fail To State a Claim for Civil Conspiracy Because They Fail to Allege an Overt Act**

Plaintiffs' civil conspiracy claim should be dismissed because the FAC fails to allege an overt act in furtherance of the conspiracy. *E.g.*, *Gross ex rel. United States v. AIDS Rsch. All.-Chicago*, No. 01-c-8182, 2004 WL 905952, at *9 (N.D. Ill. Apr. 27, 2004) (dismissing a civil conspiracy claim for failure to allege an overt act). Plaintiffs attempt to overcome this flaw by making two contradictory arguments. (1) Plaintiffs argue that they did sufficiently allege an affirmative overt act, not merely inaction; and (2) Plaintiffs make the novel argument that mere inaction satisfies the overt act element here, in this particular case, because their civil conspiracy claim is premised on a failure to act in accordance with an affirmative duty to act. Both arguments fail.

First, no matter how Plaintiffs state and re-state the allegations in the FAC, the reality is the same – the FAC alleges nothing more than mere inaction. Plaintiffs and Defendants appear to agree that FAC Paragraph 183 is the portion of the FAC where Plaintiffs attempt to allege overt acts. It states: "In furtherance of this agreement, Defendants refused to implement the Three-Step Match Protocol, to eject crowd members who were engaged in discrimination, [and] to respond to Plaintiffs' multiple requests for Defendants to take action beyond and throughout the match." [Dkt. 29, ¶ 183.] Each allegation in FAC Paragraph 183 describes not overt action, but purported inaction. Each allegation identifies an action that Defendants allegedly *failed to take* and that, in Plaintiffs' view, Defendants *should have taken*. No matter how these allegations are phrased, they are allegations of inaction. And inaction cannot support the over-act element of a civil conspiracy claim. *Gross*, 2004 WL 905952, at *9; *Weber v. E.D.&F Man Int'l, Inc.*, No. 97-c-7518, 1999 WL 35326, at *4 (N.D. Ill. Jan. 13, 1999); *Ritchie*

4

*Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 229–340 (S.D.N.Y. 2015) (collecting cases).

Second, Plaintiffs assert that such inaction satisfies the overt act element in this particular case because, according to Plaintiffs, they allege a conspiracy premised on a failure to satisfy an affirmative duty to act. Even if the Court accepts Plaintiffs' assertion that 775 ILCS 5/5-102 creates an affirmative duty to prevent third-party discriminatory conduct, Plaintiffs' argument is novel, it has no support in law, and it must fail.

As an initial matter, Plaintiffs' argument is novel. Plaintiffs do not cite a single case – and Defendants have found none – supporting their theory. Instead, Plaintiffs point to the various authorities cited in Defendants' Brief, cited for the proposition that mere inaction, rather than an affirmative overt act, cannot withstand Rule 12(b)(6). Plaintiffs claim that the principle does not apply in this case because none of the authorities cited involved an affirmative duty to act. [Pl. Br. at 12.] But, in making this distinction, Plaintiffs read into the cases a variable that is not discussed and is not relevant to the courts' decisions. *Gross ex rel. United States v. AIDS Rsch. All.-Chicago*; *Weber v. E.D.&F Man Int'l, Inc.*; and *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, say nothing about a duty to act or lack thereof. Rather, the cases focus on the distinction between affirmative actions and inaction.

By reading something new into these cases Plaintiffs attempt to invent a new principle of conspiracy law. But such invention fundamentally misunderstands the purpose of the overt act element. "[I]t is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage." *Hoffman v. Halden*, 268 F.2d 280, 295 (9th Cir. 1959). If the Court accepts Plaintiffs' new theory, then mere thought and conversation, without more, become actionable wherever a defendant fails to

5

act in accordance with an affirmative duty to do so, even if such a failure is entirely unintentional or unknown. Such a ruling would mark a significant expansion of civil conspiracy doctrine.

Not only do Plaintiffs misunderstand the purpose of the overt act requirement, they also fail to appreciate the implications of their novel theory. For example, the statute of limitations for a civil conspiracy claim starts as soon as the defendant commits an "overt act that is alleged to cause damages to the plaintiff." *Gaddis v. Demattei et al.*, No. 3:21-cv-179, 2022 WL 672470, at *14 (S.D. Ill. Mar. 7, 2022). If, as Plaintiffs suggest, inaction satisfies the overt act element wherever a plaintiff alleges an affirmative duty, it is not clear when the statute of limitations would begin to run: when the affirmative act arose, at the first opportunity to act, the last opportunity to act, etc. Additionally, the fact that the limitations period commences when the overt act is committed underscores Defendants' point here. It demonstrates that the civil conspiracy framework requires all civil conspiracy claims to involve an affirmative overt act.

Finally, it bears noting that a plaintiff who pleads a civil conspiracy to shirk an affirmative duty can, in theory, allege affirmative overt acts. In other words, the fact that a civil conspiracy is premised on a failure to satisfy an affirmative duty does not make the overt act element an impossible obstacle – or even a more challenging obstacle. Using this case as an example, and speaking purely hypothetically, Plaintiffs could have satisfied the overt act element by alleging that defendants took active action, which could include (1) instructing the referees not to pause the match due to the Chant; (2) instructing personnel not to make announcements over the PA system related to the Chant; (3) instructing security personnel not to eject fans for participating in the Chant; or other similar affirmative overt actions that furthered the alleged conspiracy and did not amount to mere inaction. Of course, none of these allegations would be

6

4881-4170-8822.1

true and it would seem the Plaintiffs know that, otherwise one can assume the FAC would have so stated. The reality is the actual facts do not allow for such allegations.

Plaintiffs' civil conspiracy claim accordingly should be dismissed with prejudice.

## II. Plaintiffs Fail To State a Claim for Civil Conspiracy Because They Fail to Allege an Agreement

As a preliminary matter, Plaintiffs attempt to understate the correct pleading standard for civil conspiracy claims. While, unlike fraud, there is no heightened pleading standard for civil conspiracy claims, a civil conspiracy plaintiff "must meet a high standard of plausibility" when alleging "a vast, encompassing conspiracy," such as the one alleged here. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). Plaintiffs instead try to minimize the pleading standard by latching onto a single clause in one easily distinguishable case. According to Plaintiffs, they must only allege "the participants in the conspiracy, their unlawful intentions, the temporal origins of the conspiratorial scheme, and the resulting harm." [Pl. Br. at 8] (citing *Maglaya v. Kumiga*, No. 14-cv-3619, 2015 WL 4624884, at *15 (N.D. Ill. Aug. 3, 2015)).

Plaintiffs' reliance on *Maglaya* is misleading. The plaintiff in *Maglaya* lodged multiple civil conspiracy claims and the *Maglaya* Court therefore conducted multiple civil conspiracy analyses. Here, the clause Plaintiffs rely on appears at the end of the *Maglaya* Court's opinion. The full sentence states: "And as discussed above in the § 1985 context, Plaintiffs have sufficiently alleged a conspiracy by detailing the participants in the conspiracy, their unlawful intentions, the temporal origins of the conspiratorial scheme, and the resulting harm." *Maglaya*, 2015 WL 4624884, at *15. As the full sentence makes clear, to understand what the *Maglaya* Court deemed a sufficiently pleaded civil conspiracy claim, a reader must look to the *Maglaya* Court's analysis of the § 1985 conspiracy claim, and not simply cite an out-of-context statement from that opinion. Indeed, in its discussion of the § 1985 conspiracy, the

7

*Maglaya* Court stated that the complaint survived Rule 12(b)(6) because the pleading (1) named the individual parties involved in the conspiracy, (2) alleged the general purpose of the conspiracy, (3) the approximate time that the conspiracy was entered into, and (4) an overt act in furtherance of the conspiracy. *Id.* at *12–13.

In other words, *Maglaya* is hardly the authority Plaintiffs would have the Court believe. It does not contradict the requirement that a plaintiff allege an agreement with specificity. On the contrary, *Maglaya* reinforces the principle that a civil conspiracy plaintiff must provide some form or scope of the agreement (*i.e.*, the who, what, where, or when.). For all the reasons stated in Defendants' Brief, the FAC fails to do so because, among other things, it fails to provide any form or scope to the alleged agreement, and instead only makes the naked allegation that some unknown person or people at SMG, and some unknown person or people at the Park District, and possibly some other unknown people, agreed, at some unknown time, to take unknown steps, to permit third parties to engage in the Chant.

Even if the Court were to accept Plaintiffs' diluted pleading standard for civil conspiracy claims, the FAC still fails to meet Plaintiffs' invented reduced standard. Namely, the FAC fails to plead unlawful intentions. Plaintiffs say: "[I]t [is] entirely plausible that Defendants entered into an agreement to host the 2019 Gold Cup Final knowing about the likely use of the Chant but refused to take any steps to curtail the predictable sexual orientation discrimination." [Pl. Br. at 9.] In other words, Plaintiffs seem to acknowledge that, at most, they have alleged an agreement to do something lawful (host a soccer match), by lawful means, with knowledge that it *could* lead to unlawful third-party conduct. Knowledge and foreseeability, however, do not equal unlawful intent. To plead unlawful intent, a civil conspiracy plaintiff must allege an

agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. The FAC alleges neither.

Finally, although Plaintiffs state that *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930 (7th Cir. 2012), is "clearly distinguishable," Plaintiffs do nothing to meaningfully distinguish the case. [Pl. Br. at 10.] They merely make the conclusory statement that in *Independent Trust* the plaintiff "failed to allege any agreement," whereas here, the FAC "alleges facts sufficient to support the conspiracy claim." [Pl. Br. at 10.] Plaintiffs fail to shed any light on how *Independent Trust* is distinguishable to the case at hand. It is not meaningfully distinguishable and it should guide the Court here.

### III. Plaintiffs' Civil Conspiracy Claim is Preempted by the Illinois Human Rights Act

A common-law claim is preempted by the IHRA if a plaintiff cannot "prove the elements of [their claim] independent of the legal duties furnished by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). Here, it is plain that Plaintiffs cannot prove a civil conspiracy to violate the IHRA independent of the legal duties furnished by the IHRA. To be sure, violating the IHRA is the sole object of Plaintiffs' conspiracy claim.

Plaintiffs attempt to overcome this problem by pointing to the duty of care owed by a property owner to an invitee. Perplexing as it may be, Plaintiffs essentially argue that they can prove the elements of a conspiracy to violate the IHRA independent of the IHRA because Defendants, as property owners, owed a duty of care to Plaintiffs, as invitees, and breached that duty by failing to prevent the Chant. Plaintiffs are wrong on multiple levels.

First, and most fundamentally, the FAC explicitly pleads the civil conspiracy claim as a conspiracy to violate the IHRA. It does not plead a conspiracy to breach a duty of care owed to invitees. As such, preemption here is even more apparent than it was in *Veazey v.*

9

*LaSalle Telecomm., Inc.*, 779 N.E.2d 364, 371 (Ill. App. Ct. 2002), *Lopez v. Child.'s Mem'l Hosp.*, No. 02-C-3598, 2002 WL 31898188, at *7 (N.D. Ill. Dec. 31, 2002), and *Nance v. Rothwell*, No. 09-c-7733, 2011 WL 1770306, at *11–12 (N.D. Ill. May 9, 2011). Unlike those cases, where the plaintiffs alleged a civil conspiracy to engage in conduct that, only when analyzed, proved to be conduct covered by the IHRA,[2] the FAC, on its face, pleads a civil conspiracy to violate the IHRA. By extension, Plaintiffs' conspiracy claim is wholly dependent on the legal duties furnished by the IHRA. Plaintiffs' reliance on premise liability is merely an attempt to confuse the issues.[3]

Second, even if Plaintiffs were correct that they can overcome preemption by establishing premises liability, Plaintiffs' argument would still fail because Plaintiffs cannot establish premises liability here. The misconduct Plaintiffs allege – failure to stop the Chant – does not give rise to premises liability. Under Illinois law, a landowner who holds his land open to the public is liable to invitees for **physical** harm caused by third parties. *C.H. v. Pla-Fit Franchise, LLC*, 83 N.E.3d 633, 640 (Ill. App. Ct. 2017) (citing the Restatement (Second) of Torts § 344 and noting Illinois courts' adoption of the same). Landowners are not liable to invitees for **emotional** harm caused by third parties. *Id.* ("We decline . . . to extend a duty under section 344 of the Restatement to cases not involving physical harm."); *see also Lewis v.*

---

[2] Plaintiffs correctly point out that all of these cases involved an employment relationship, and that Defendants' Brief does not cite a case involving public accommodations discrimination. Of course, neither party has cited a case involving a civil conspiracy to commit public accommodations discrimination. No such case seems to exist. It would seem Plaintiffs are the first to attempt a conspiracy claim on this theory.

[3] By turning to premise liability to argue against preemption, Plaintiffs underscore why a civil conspiracy plaintiff is required, under Rule 12(b)(6), to provide some clear form or scope to the conspiracy, as discussed in Section II above. If the complaint fails to provide some form or scope to the conspiracy, the nebulous agreement becomes a moving target. Using this case as an example, Plaintiffs originally pleaded their civil conspiracy claim as an agreement to commit a hate crime, in the FAC Plaintiffs changed course and pleaded an agreement to violate the IHRA, and in Plaintiffs' Brief Plaintiffs changed course again and described an agreement to breach a property owner's duty of care. If this Court does not dismiss Plaintiffs' civil conspiracy claim, the nebulous agreement will likely continue to change shape as this litigation progresses.

*Heartland Food Corp.*, 17 N.E.3d 219 (Ill. App. Ct. 2014) (refusing to extend premises liability under section 344 of the Restatement to emotional harm). Instead, claims for non-physical injuries are properly brought as claims for intentional and negligent infliction of emotional distress. *Cf. Pla-Fit Franchise*, 83 N.E.3d at 640.

Here, the FAC does not allege any physical harm. Plaintiffs claim they suffered injuries every time they allegedly heard the Chant. Any injury resulting from hearing the Chant is purely emotional. Plaintiffs do not, and cannot, allege any physical or bodily harm from hearing the Chant. Therefore, as a matter of law, even if all allegations in the FAC are accepted as true, Plaintiffs cannot establish premises liability for Defendants' alleged failure to prevent the Chant, and Plaintiffs' argument against IHRA preemption must fail.

In a footnote, Plaintiffs contend that even if their premises liability theory does not defeat preemption, this Court should nonetheless rule against preemption by holding that the IHRA creates a statutory tort. Plaintiffs do not cite a single case holding that the IHRA creates a statutory tort, and Defendants are aware of none. More importantly, even if this Court were to reach such a holding, it would not cure Plaintiffs' preemption problem. Even if the legal duties furnished by the IHRA were dubbed "statutory torts," it would remain true that Plaintiffs cannot establish a civil conspiracy to violate the IHRA independent of the IHRA. Stated differently, even if this Court holds that the IHRA creates a statutory tort, Plaintiffs still rely on the IHRA for the conspiracy claim and therefore the conspiracy claim is preempted.

Finally, although the FAC does not plead a statutory claim for conspiracy under 775 ILCS 5/6-101(B), Plaintiffs contend that such a claim, if it had been lodged here, would be exhausted. Plaintiffs do not (and cannot) dispute that Plaintiffs' administrative complaint did not contain a conspiracy claim under 775 ILCS 5/6-101(B). And Plaintiffs are correct that claims

11

not asserted in an administrative charge are nonetheless deemed exhausted if they are reasonably related to the claims brought in the charge, meaning they describe the same conduct and implicate the same individuals as the claims brought in the administrative charge. [Pl. Br. at 15.] Plaintiffs are incorrect, however, in arguing that a statutory claim for conspiracy under 775 ILCS 5/6-101(B) is reasonably related to the claims that appear in their administrative claim. To the contrary, a statutory conspiracy claim implicates completely new conduct that was not implicated in Plaintiffs' administrative charge – an alleged agreement between alleged co-conspirators. Accordingly, had Plaintiffs pleaded a claim for conspiracy under 775 ILCS 5/6-101(B), such a claim would be unexhausted.

### IV. The Chicago Park District Is Immune to Both of Plaintiffs' Claims

Plaintiffs incorrectly state that the Tort Immunity Act does not apply to Count One because the Tort Immunity Act only applies to common-law torts [Pl. Br. at 5.] The issue is not as clear as Plaintiffs make it seem, and this Court should hold that the Tort Immunity Act covers public accommodations claims brought under the IHRA.

In *Raintree Homes, Inc. v. Village of Long Grove*, the Illinois Supreme Court confronted this question and explicitly opted "not [to] adopt or approve the appellate court's reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort." 807 N.E.2d 493, 447 (Ill. 2004). In contrast, as the *Raintree* opinion suggests, there are Illinois court opinions holding that the Tort Immunity Act applies only to tort claims. *Rozsavolgyi v. City of Aurora*, although vacated and therefore nonbinding, is helpful on this point. 58 N.E.3d 65, 99 (Ill. App. Ct. 2016), *vacated* 102 N.E.3d 162 (Ill. 2017). The *Rozsavolgyi* Court confronted and persuasively discussed the conflicting precedents. The *Rozsavolgyi* Court noted that the various Illinois state court opinions limiting the scope of the Tort Immunity Act to tort

12

claims all fail to analyze section 1-204 of the Tort Immunity Act. Section 1-204 defines injury as "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or of the United States." 745 ILCS 10/1-204. Based on the Illinois Supreme Court's *Raintree* opinion, and given the Tort Immunity Act's plain language, among other things, the *Rozsavolgyi* Court held that the Tort Immunity Act is not limited only to common law torts. Because the various courts that have found otherwise failed to engage with the text of the Tort Immunity Act, those cases should not be relied upon here. *See* Stephanie M. Ailor, Note, *The Legislature Versus the Judiciary: Defining "Injury" Under the Tort Immunity Act*, 57 DePaul L. Rev. 1021, 1021 (2008) (explaining that the various cases that have limited the Tort Immunity Act to common-law tort actions directly contradict the plaint text of the statute).

Plaintiffs also incorrectly assert that the Tort Immunity Act is inapplicable here because it does not apply to "tort claim[s] that primarily seek equitable relief." [Pl. Br. at 7.] While it is true that the Tort Immunity Act does not protect against equitable relief, it is not true that the Tort Immunity Act is inapplicable wherever a plaintiff primarily seeks equitable relief. Instead, where a plaintiff lodges claims covered by the Tort Immunity Act, and seeks both equitable and monetary relief, a court should dismiss the claims under the Tort Immunity Act *to the extent* the claims seek monetary damages. *See Gibson v. Aden*, No. 16-cv-1310, 2017 WL 1908445, at *2–3 (S.D. Ill. May 10, 2017) (dismissing a claim "to the extent it seeks money damages," where plaintiffs argued for dismissal under the Tort Immunity Act, among other things); *Olympian Grp. LLC v. City of Markham*, No. 18-cv-04919, 2020 WL 5820024, at *15 (N.D. Ill. Sept. 30, 2020) (dismissing a claim under 42 U.S.C. § 1983 "to the extent [it] seeks punitive damages" because defendant enjoyed "immunity from punitive damages"); *Williams v.*

13

*Office of Chief Judge of Cook Cty., Ill.*, No. 13-c-1116, 2015 WL 2448411, at *13 (N.D. Ill. May 21, 2015) (dismissing a claim as time barred under the Tort Immunity Act "to the extent that it seeks damages, but not insofar as it seeks . . . injunctive relief"); *Alarm Detection Sys., Inc. v. Village of Schumburg*, No. 17-c-2153, 2018 WL 4679559, at *14 (N.D. Ill. Sept. 28, 2018) (dismissing tort claims as dismissed under the Tort Immunity Act "to the extent that they seek damages" because plaintiffs accepted that the Tort Immunity Act granted immunity to money damages but argued that the Tort Immunity Act did not bar injunctive relief), *aff'd in part and rev'd in part*, 930 F.3d 812 (7th Cir. 2019) (the appellate court did not reach immunity); *Rozsavolgyi v. City of Aurora*, 58 N.E.3d 65, 99 (Ill. App. 2016) ("The City can assert immunity with respect to plaintiff's request for damages but not to her requests for equitable relief."), *vacated* 102 N.E.3d 162 (Ill. 2017).

       For the same reason, Plaintiffs are wrong in arguing that the Park District "prematurely invoke[d]" the Tort Immunity Act because the Park District "has not established—because the record has not been developed—that Plaintiffs are primarily seeking monetary damages." [Pl. Br. at 8.] Again, it does not matter what form of relief Plaintiffs *primarily* seek. The Tort Immunity Act provides immunity to monetary damages, and it is clear on the face of the FAC that Plaintiffs seek monetary damages under both Count One and Count Two, both of which are covered by the Tort Immunity Act. Accordingly, this Court should dismiss Count One and Count Two under the Tort Immunity Act, as asserted against the Park District, *only to the extent they seek monetary damages*.

## CONCLUSION

       For the reasons set forth above and in Defendants' prior submissions, Defendants respectfully request that Count Two be dismissed with prejudice against all Defendants pursuant

to Fed. R. Civ. P. 12(b)(6). Defendants further request that Counts One and Two be dismissed with prejudice against the Park District.

Date: March 24, 2022

Respectfully submitted,

/s/ *John R. FitzGerald*
Christopher Ward
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
cward@foley.com
312.832.4500
312.832.4700 (facsimile)

John R. FitzGerald
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
jfitzgerald@foley.com
414.297.5079
414.297.4900 (facsimile)

*Attorneys for Defendants SMG d/b/a ASM Global and the Chicago Park District*

4881-4170-8822.1

## CERTIFICATE OF SERVICE

I, John R. FitzGerald, an attorney, hereby certify that on March 24, 2022, I caused the foregoing DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM to be filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

/s/ *John R. FitzGerald*
John R. FitzGerald

4881-4170-8822.1