UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JORDAN PENLAND, KARL GERNER, EDWARD R. BURKE, and PAUL C. BURKE,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CHICAGO PARK DISTRICT and ASM GLOBAL,<br><br>　　　　Defendants. | Judge Lindsay C. Jenkins<br><br>Case No. 1:21-cv-05581 |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

The Court's February 17, 2022 Order (the "Order") [Dkt. 77] put Plaintiffs to a simple task: identify the nature of the theory asserted and explain how it plausibly relies on allegations raising an inference that Defendants acted or failed to act *because of* their sexual orientation. Plaintiffs did not heed the directions in the Second Amended Complaint ("SAC"), and the Opposition does not clarify exactly what Plaintiffs aver as their theory of liability under the Illinois Human Rights Act ("IHRA"). Even as they purport to commit to a disparate treatment public accommodations theory, they failed to fix the First Amended Complaint's ("FAC") flaws.

Most importantly, Plaintiffs again fail to grasp the practical outcome of what will result if the Court finds it can apply the IHRA here: public accommodations liability for alleged failure to keep public spaces completely free of disruptive, offensive, or uncomfortable speech. The First Amendment will not permit this as-applied result under a strict scrutiny analysis, and Plaintiffs' "no state actor" and "limited public forum" arguments ignore their own admissions. Nor does Plaintiffs' attempt to catastrophize by claiming Defendants want the First Amendment to strike

down fan codes of conduct help them – if anything, it reveals how badly they fail to see what this case is about: use of a public accommodations statute to impose liability for failure to impose and enforce content-based speech restrictions against a minority. No court appears to have ever endorsed such a theory, and this Court should not entertain it.

The SAC also fails for the same reason the Court relied upon earlier – failure to plead a plausible right to recovery above the speculative level. Having seemingly committed to a disparate treatment theory, Plaintiffs are wrong to claim – and do so contrary to the Court's Order and Seventh Circuit law – that they have no burden to plausibly allege causation. They clearly do on a public accommodations theory. *Gillard v. Northwestern Univ.* 366 F. App'x 686, 688–89 (7th Cir. 2010). Unable to escape this pleading obligation, Plaintiffs cannot survive by repeating the FAC's flaws and failing to address what the Order relied upon in dismissing the FAC. Most importantly, Plaintiffs continue to offer nothing but speculation to address the logical fallacy for how Defendants subjected them specifically to complained-of conduct *because of* their sexual orientation experienced by tens of thousands of others. That obvious failure, along with Plaintiffs' failure to differentiate between Defendants and identify an existing service denied to them (and the tens of thousands of others also present) resulted in dismissal of the FAC. Still unaddressed and incapable of cure, Defendants seek dismissal with prejudice.

## ARGUMENT

I. **Plaintiffs' Incorrect "No State Actor," "Limited Public Forum," And Catastrophized Arguments Cannot Prevent First Amendment Application**

Accusing Defendants of "weaponizing" the First Amendment, Plaintiffs argue applying constitutional requirements here will effectively invalidate fan codes of conduct at every public facility. In service of this "parade of horribles" argument, Plaintiffs ignore that they named a state actor as a defendant and repeatedly allege specific actions against it – thereby both

2

admitting the degree of government involvement and rendering their "limited public forum" assertions irrelevant. As for claiming Defendants want the First Amendment to invalidate conduct standards at public events, Plaintiffs have it backward. Certainly, Defendants do not make this ridiculous contention – rather, they argue the First Amendment precludes liability under the IHRA based on a failure to eliminate disruptive, offensive, or uncomfortable speech in public spaces. There is thus good reason no court has interpreted a public accommodation law this way and why this Court should reject Plaintiffs' misplaced arguments here.

      A.      **Plaintiffs Have Conceded State Actor Enmeshment**

Critical to Plaintiffs' effort to dodge the constitutional question their legal theory implicates is their contention that no First Amendment concerns exist due to the purportedly insufficient level of state actor enmeshment. Plaintiffs intentionally named a state actor as a defendant and repeatedly alleged twin actions against both a state actor and a private actor. Indeed, the SAC expressly describes SMG and the Park District as operators of Soldier Field, alleging that both SMG and the Park District "promulgated the Soldier Field Code of Conduct," and took prior actions "to prevent other forms of harassment and discrimination besides sexual orientation discrimination." [SAC ¶¶ 8–9, 21, 74.] Plaintiffs even allege independent "failures to act" against the Park District *only* – such as failure to provide assurances Plaintiffs' sought from that state actor. [SAC ¶¶ 45, 73.] The Court need look no further than these admissions to find the requisite state actor involvement. *Soo Line Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("Judicial admissions are … binding upon the party making them").[1]

---

[1] Ignoring the implications of naming the Park District as a Defendant, Plaintiffs claim this Court has already found events at Soldier Field do not involve sufficient state actor enmeshment, relying on the two *Beckman* opinions. Fundamentally, the Park District was not a defendant in *Beckman*, whereas Plaintiffs have made it one here. Plaintiffs also overstate what the *Beckman* opinions establish, particularly given that *Beckman* acknowledges the contract relationship between the Park District and a private actor in and

3

### B. Plaintiffs' Cannot Avoid The Fatal Application Of Strict Scrutiny Analysis

Having erroneously argued insufficient state actor involvement, Plaintiffs argue for a "limited public forum" analysis to the First Amendment issue. Their naming of the Park District and admitting state actor enmeshment, however, destroys validity to such arguments because a forum-based approach only applies when reviewing "restrictions that the government seeks to place on the use of its property." *Int'l Soc. For Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992). The SAC does not address generic restrictions placed by the Park District on Soldier Field – it challenges the conduct of the Park District itself and what the Park District allegedly did (or failed to do) with respect to a specific event. In other words, the government is a party and its specific actions directed at these specific Plaintiffs on a specific day are under attack. That is well beyond mere government restriction on use of government property.

Instead, and as elaborated on *infra,* what Plaintiffs' legal theory would do is give the IHRA a first-ever interpretation, creating statutory liability against state actors for failure to curtail offensive public expression traceable to a minority group – in other words, failure to enforce a **content-based speech restriction against a protected category**.[2] And when a claimant attempts to deploy public accommodation laws to regulate content-based speech, strict scrutiny applies <u>without regard to forum</u>. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of*

---

of itself could be a valid avenue of proving state action. *Beckman v. Chi. Bears Football Club, Inc.*, 2018 WL 11200576, at *4 (N.D. Ill. Dec. 13, 2018). However, Defendants do not and need not rely on the contractual relationship between the Park District and SMG – they rely upon Plaintiffs' own clear concessions in the SAC.

[2] Even were a forum-based analysis applicable (it is not), and even if Soldier Field were a nonpublic forum (which is debatable, *see, e.g.*, *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018 n.8 (D.C. Cir. 1988)), the First Amendment still bars Plaintiffs' claim because even at a non-public forum, a speech restriction is unconstitutional if viewpoint-based. *Perry Ed. Assn v. Perry Local Educators Assn*, 460 U.S. 37, 46 (1983). Plaintiffs' effort to have the IHRA prohibit a particular offensive phrase would result in such a viewpoint-based restriction. *See Iancu v. Brunetti*, 139 S. Ct. 2294 (2019) (restricting "immoral and scandalous" speech constituted a viewpoint-based restriction because it distinguishes between views

*Bos.,* 515 U.S. 557, 572 (1995), *303 Creative LLC v. Elenis,* 6 F.4th 1160, 1178 (10th Cir. 2021), *cert. granted,* 142 S. Ct. 1106 (2022); *Telescope Media Grp. v. Lucero,* 936 F.3d 740, 750, 756–77 (8th Cir. 2019). While Plaintiffs seemingly confuse the analysis knowing their interpretation of the IHRA cannot survive strict scrutiny (and they make no argument it can), the nature of their claim and naming of the Park District as a party permit no other analysis.

      C.    **Plaintiffs Cannot Avoid The Unconstitutional-As-Applied Novel Implications Of Seeking Liability For Failure To Impose Improper Speech Restrictions**

With Plaintiffs' misguided "no state actor" and "limited public forum" arguments debunked, the logical fallacy in their sweeping argument that Defendants hope to "weaponize" the First Amendment to prohibit enforcement of codes of conduct at public facilities becomes obvious. Defendants clearly do not claim the First Amendment precludes establishment and enforcement of such codes at public gatherings.[3] Rather, the First Amendment does not allow for lability against public accommodations merely because protected expression may violate a code of conduct. If anyone is trying to "weaponize" anything, it is Plaintiffs by claiming the IHRA allows for such liability. And while Plaintiffs claim there is nothing novel about their theory (chastising Defendants for not citing authority proving a negative,[4] but offering no authority to show its prior adoption), the reality is Plaintiffs do seek a first-of-its-kind interpretation of a public accommodations statute.

---

that align with conventional moral standards and views that are hostile to them).

[3] Defendants of course *could have* ejected patrons participating in the Chant. Ironically, had Defendants done so, and had such a patron sued challenging the ejection under the First Amendment, then a forum-based approach would be the proper framework because it would actually challenge a restriction placed on the use of government property.

[4] Plaintiffs' continued argument that there is nothing "novel" about their legal theory is puzzling given that the Court already explained that the complaint fails to provide proper notice of any actual viable claim when it dismissed their pleading the last time around. [Dkt. 77 at 12.]

The First Amendment cannot permit liability of state actors and those enmeshed with them for allegedly failing to regulate certain types of speech by certain type of minorities – and Defendants are aware of no court that has ever said otherwise. In short, Plaintiffs' Opposition misses the mark, offering red herrings to dodge the reality that content-based speech restrictions – the inevitable as-applied result of Plaintiffs' theory – are presumptively unconstitutional. *See Vieth v. Jubelirer*, 541 U.S. 267, 294 (2004). They have admitted state actor involvement and enmeshment and a "limited public forum" analysis through such concessions. And they are wrong to catastrophize that applying the First Amendment here will invalidate fan codes of conduct at public gatherings. The First Amendment does not allow a public accommodations statute to impose legal liability for failure to violate another person's constitutional rights absent an application that somehow survives strict scrutiny. Plaintiffs have not and cannot offer anything of the sort, and the Court should accordingly dismiss the SAC with prejudice.

## II. Having Seemingly Committed To A Disparate Treatment Theory, Plaintiffs' SAC Repeats The FAC's Flaws And Again Fails To Plausibly Allege An IHRA Violation

Both the Order and the Motion directly challenged Plaintiffs to fulfill a simple task: clearly identify the theory they hope to pursue here amongst the four outlined in the Order. [Dkt. 77 at 8–11.] One might have imagined that for the avoidance of doubt, Plaintiffs would have in the Opposition come right out and said "we are pursuing such-and-such theory." For whatever reason, they elected not to make this point abundantly clear. It does appear, however, that Plaintiffs have now committed to a disparate treatment theory based on their causation arguments, such as Defendants "discriminate[d] against LGBTQ+ patrons (the Plaintiffs) on the basis of sexual orientation by failing to prevent, address, or stop a homophobic chant from occurring 28 times when Defendants prohibit other forms of abusive and discriminatory conduct against other patrons." [Dkt. 91 at 4.] While this makes it easier to analyze the SAC, it does not

6

save the SAC from dismissal. The allegations in the SAC still do not satisfy Rule 8's bar for notice pleading of factual assertions sufficient to state a plausible right for relief – and Plaintiffs' arguments, completely ignoring the other 60,000+ fans at issue, offer nothing to find otherwise.

### A. Plaintiffs Must Plausibly Allege Causation To Survive Rule 12(b)(6) On A Public Accommodations Theory Of Liability

The Court already made clear Plaintiffs cannot survive dismissal without plausibly alleging causation on a disparate-treatment–based public accommodations claim. [Dkt. 77 at 8 (the FAC "fail[ed] to provide proper notice of how Defendants' actions or inactions proximately caused the denial" of something or "whether or how Defendants allegedly acted (or failed to act when required to do so), because of Plaintiffs' protected status"); at 10 and 11 (the FAC fails "to specify whether Defendants failed to act because they had homophobic motives of their own").] Despite these warnings, Plaintiffs complain Defendants (not the Court) attempt to impose some heightened pleading standard, arguing they need not plead causation. [Dkt. 91 at 4 (citing *Gartin v. Ind. Univ.*, 2021 WL 147000 (S.D. Ind. Jan. 15, 2021).] This is at odds with what the Court has instructed. It is also wrong. *Gartin* involved employment discrimination under Title VII. 2021 WL 147000 at *4. In the public accommodation context, a complaint must allege facts raising a plausible inference of causation. *Gillard*, 366 F. App'x at 688–89. In other words, the SAC must allege <u>specific facts</u> raising a plausible inference that Defendants directed the complained-of conduct <u>specifically at them because of their sexual orientation</u>. It again fails this requirement.

### B. Plaintiffs' Speculation Cannot Explain How Defendants Directed Conduct Experienced By Thousands At Plaintiffs Because Of Sexual Orientation

Apparently believing themselves free to ignore the fallacy of claiming to be singled out by conduct experienced by more than 60,000 others, the SAC added no facts raising a plausible inference that Defendants either withheld services from Plaintiffs or treated them differently

7

*because of* sexual orientation. This failure, even after specific instruction from the Court to allege causation, is as telling as their incorrect argument that they need not plausibly plead causation. [*E.g.*, SAC ¶¶ 58–60; 69(d); 73.] Just as before, Plaintiffs cannot make any allegations that raise their claim accusing Defendants of acting or failing to act *because of* Plaintiffs' sexual orientation above the speculative level. At most, Plaintiffs conclusively allege that Defendants previously took unspecified actions against fans chanting racial slurs and pejoratives at women. [SAC ¶¶ 75-76; Dkt. 91 at 9.] Conspicuously absent is any identifying details, such as when this supposedly occurred, at what event, by whom, etc. Given that Plaintiffs attached several exhibits to the SAC (including several news articles) where Plaintiffs were describing real-life events, one might expect they would have <u>some</u> identifying details or evidence in support. Having instead resorted to the proverbial "information and belief," Plaintiffs make plain they have nothing to "plausibly suggest that [they have] a right to relief … above the 'speculative level.'" *De David v. Alaron Trading Corp.*, 796 F.Supp.2d 915, 920 (N.D. Ill. 2010) (quoting *Bell Atl. Corp. v. Tombly*, 550 U.S. 544, 555-56 (2007)).

Not only are Plaintiffs' imaginings that Defendants would have acted differently in response to different fan behavior insufficient to show discrimination because of sexual orientation, it ignores the elephant in the room vis-à-vis Defendants' purported motives. Plaintiffs admit that over 60,000 other people attended the Gold Cup Final and that all present were subject to the Chant, regardless of protected characteristics. [SAC ¶¶ 47–61.] The SAC further concedes each patron received the same access to the security services offered by Defendants. <u>In other words, Defendants purportedly simultaneously subjected tens of thousands of others to the same actions (or inactions) as those complained of by Plaintiffs</u>. Contending Defendants somehow singled Plaintiffs out and directed conduct at them because of sexual

8

4853-8942-4738.6

orientation, without addressing how the same experience shared by 60,000+ others, underscores that such purported causation is speculation at its utmost. Given the sheer volume of other individuals purportedly subjected by Defendants to the to the same action, there is no way Plaintiffs can demonstrate Defendants' alleged conduct directed at them had anything to do with their sexual orientation.

Unsurprisingly, no other allegation in the SAC raises an inference of causation beyond the speculative level. Plaintiffs allege fans of Team Mexico noted their Pride jerseys and "seemingly" directed the Chant at them, and then, when Plaintiffs complained to stadium officials, the officials did not understand the meaning of the Chant and/or did not want to address it for fear of retaliation from Mexico fans. [SAC ¶¶ 56-57, 82.] If anything, these allegations suggest it was fear of retaliation, not discriminatory animus, motivating stadium officials. Nor do Plaintiffs plausibly explain how the Chant somehow started *because of* their sexual orientation. Rather, they concede the opposite by describing the Chant's history, association with fans of Team Mexico, and direction of the Chant at opposing team goalkeepers. [Dkt. 84 at 7–14.]

The degree of speculation and lack of logic Plaintiffs rely upon to plead causation is all the more striking in the SAC because the Order made plain that is how the prior pleading failed. What is thus clear is that Plaintiffs cannot plead actual facts permitting a plausible allegation of causation, and the Court should accordingly dismiss with prejudice.

### C. Plaintiffs Have No Explanation For Why They Failed To Correct Other Clearly Identified Pleading Deficiencies

Among the Order's many reasons finding the FAC wanting, the Court observed that it "fail[ed] to plausibly show that Defendants caused a denial of access to an existing service." [Dkt. 77 at 10.] As pointed out in the Motion, the SAC fails to cure this flaw because it relies on the same allegations already deemed insufficient in the FAC. [Dkt. 88 at 10.] Plaintiffs'

9

Opposition does not meaningfully address this shortcoming beyond doubling down on the speculation that somehow the conduct experienced by tens of thousands was actually directed at Plaintiffs because of their sexual orientation. Plaintiffs' Opposition ignores the SAC's repeated failure to distinguish between Defendants. If anything, the way Plaintiffs changed their prior pleadings – going from "Defendants" to "Defendants CPD and ASM Global" – only reiterates their admissions of government action and state actor enmeshment. That Plaintiffs have continued rehashing the same deficiencies speaks to the propriety of dismissal with prejudice.

### III. The Chicago Park District Is Immune To Plaintiffs' Claim

Plaintiffs again argue the Tort Immunity Act only applies to common-law torts. Once again, they are wrong. The Illinois Supreme Court explicitly chose "not [to] adopt or approve the . . . reasoning that the Tort Immunity Act categorically excludes actions that do not sound in tort." *Raintree Homes, Inc. v. Village of Long Grove,* 807 N.E.2d 493, 447 (Ill. 2004).

### CONCLUSION

For the reasons state above, the Court should grant Defendants' Motion to Dismiss with prejudice.

Date: May 17, 2023   Respectfully submitted,

/s/ *Christopher Ward*
Christopher Ward
Amanda Hibbler
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654-4762
cward@foley.com
ahibbler@foley.com
312.832.4500 (CGW)
312.832.5175 (ACH)
312.832.4700 (facsimile)

John FitzGerald
Foley & Lardner LLP
777 East Wisconsin Ave.
Milwaukee, WI 53202-5306
jfitzgerald@foley.com
414.297.5079
414.297.4900 (facsimile)

*Attorneys for Defendants SMG d/b/a ASM Global & Chicago Park District*

10

## **CERTIFICATE OF SERVICE**

      I, Christopher Ward, an attorney, hereby certify that on May 17, 2023, I caused the foregoing REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS to be filed through the Court's CM/ECF system, which shall send notification of such filing to all counsel of record at their e-mail addresses on file with the Court.

                                            /s/ *Christopher Ward*
                                              Christopher Ward